## GENE HOWARD BAGLEY *v.* STATE OF MARYLAND

[No. 270, September Term, 1968.]

*Decided March 18, 1969.*

*Joseph Rosenthal* for appellant.

*Francis B. Burch, Attorney General, H. Edgar Lentz, Assistant Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Robert S. Fertitta, Assistant State's Attorney for Baltimore City,* for appellee.

PER CURIAM.

The appellant, Gene Howard Bagley, a/k/a James Howard Bagley, a/k/a James William Stewart, was convicted of murder in the second degree in the Criminal Court of Baltimore, by Judge Meyer M. Cardin, sitting without a jury. He was sentenced to ten years under the jurisdiction of the Department of Correction.

The only question presented in this appeal is whether the evidence was sufficient to convict.

It was stipulated and agreed at trial that the autopsy record be introduced. That record showed that the deceased, Willis Edmunds, died of multiple gunshot wounds and massive internal hemorrhage.

Officer Harold Sanders, of the Baltimore City Police Department, testified that at about 11:20 p.m. on January 3, 1967, he and another officer were on foot patrol when they heard three gunshots. A patrol car and two other officers were at the curb by Officer Sanders. All of the officers moved in the direction of the shots and the officers in the patrol car quickly pulled up to the corner of Abbott and Bond Streets where they grabbed the appellant. Officer Sanders went around the corner to Ashland Avenue and Dallas Street where he found the body of the deceased.

Officer Robert Cohen testified that he was standing with Officers Sanders, Warfield, and Grunder when he heard three quick shots from the vicinity of Ashland and Bond Street. He immediately got into the patrol car, which proceeded south on Bond Street. At Bond Street near Abbott Street he observed a man running out of a three foot alley behind the restaurant at Ashland and Bond Street. Officer Cohen got out of the car and when the man saw Cohen he stopped running and just walked. The man put his hand in his left pocket and pulled out a metallic object. When Cohen drew closer he observed that the object was a gun. He shouted to Officer Grunder to "watch it, he's got a gun." Officer Grunder got out of the car and the man dropped the object. The man was placed under arrest. Officer Cohen said to him, "Where did you get the gun?", and the man replied, "What gun, I didn't have a gun, I want a lawyer." Officer Cohen stated that the exact location of the arrest was about 1¼ blocks from the body of the deceased, and that he saw the man run out of the alley approximately one minute after the shots were fired. Officer Cohen identified the appellant as the man whom he had seen that night. He also identified the gun as that retrieved by another officer from the street and stated that it was the only gun on the street. He was unable to identify the gun as that which the appellant had in his hand.

Officer Frank Grunder, Jr., testified that he heard the shots, and with Officers Warfield and Cohen proceeded in the patrol car

south on Bond Street, and saw a man run out from a three foot alleyway located just north of Ashland Avenue on Bond Street. The spot where the man emerged from the alley was about 75 feet down the alley from the body of the deceased. Officers Grunder and Cohen approached the man and when they were three feet away the man took his hand from his pocket. Officer Cohen said, "He has a gun." Officer Grunder grabbed the man's hands and in wrestling with him saw a small automatic pistol in his left hand. In wrestling with the man the gun went into the gutter of the street and was later recovered by Officer Grunder. Officer Grunder identified the appellant as the man involved and identified the gun, a .25 caliber automatic pistol, as the one which he recovered. Officer Grunder also identified pictures showing three empty cartridge cases lying on the sidewalk near the deceased, stated that he had taken the empty cartridge cases recovered from the sidewalk near the deceased as well as the pistol and two unexpended cartridges removed from the pistol to the crime laboratory.

Sergeant Charles D. Knight, assigned to the Crime Laboratory, testified that he received from Officer Grunder one .25 caliber Colt automatic pistol, three empty .25 caliber cartridges and two .25 caliber loaded cartridges. He also received three bullets from the medical examiner's office which were taken from the deceased's body. Sergeant Knight's qualifications having been admitted, he testified that as a result of an examination conducted by him, he concluded that the three empty cartridge cases recovered from the scene and the three bullets recovered from the body had been fired from the pistol which he received from Officer Grunder.

The appellant testified that on the evening in question he had been at a pool room on Gay Street. He left, proceeded to Bond Street, and then went into an alley to relieve himself. While there he found a pistol lying on the ground. He picked it up, walked out of the alley, and was arrested. He stated that he did not hear any shots, that he had not seen anyone who was shot, he had not shot anyone, and that he was not near the location where the deceased's body was found.

The *corpus delicti* of murder was clearly proven here upon a showing that the person for whose death the prosecution was

instituted is dead and that the death occurred under circumstances indicating that it was caused criminally by someone. With respect to the identity of appellant as the killer, the trial court had evidence before it which directly showed or from which it could be inferred that the appellant was in possession of the murder weapon one minute after three shots were heard and that at the time the appellant was first seen by the police officers he was running from one end of an alley at the other end of which lay the deceased, who had been shot three times. The test of sufficiency of the evidence in a non-jury case is whether the evidence, if believed, either shows directly or supports a rational inference of the facts to be proved, from which the court could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Morris v. State,* 4 Md. App. 328, 331 (1968). In non-jury trials the weight of the evidence and the credibility of the witnesses rests within the determination of the trial judge. *Morris v. State, supra.* Furthermore, in non-jury trials, the trial court in performing the duty of judging the credibility of witnesses may disbelieve the exculpatory statements made by the defendant. *Morris v. State, supra.* However, when guilt is based solely on circumstantial evidence, the circumstances, taken together, must be inconsistent with, or such as to exclude, every reasonable hypothesis or theory of innocence. *Gray v. State,* 4 Md. App. 155, 159 (1968). Under all of the circumstances of this case we believe that there was sufficient evidence introduced to sustain the trial court finding that the appellant was the criminal agent and that the evidence is inconsistent with every reasonable hypothesis of innocence; and we do not believe that the trial court was clearly erroneous in its determination of this issue. Maryland Rule 1086.

With respect to the malice in the killing, it is well settled that the law presumes that in the absence of justification, excuse or some circumstances of mitigation, all homicides are committed with malice and constitute murder. *Brown v. State,* 4 Md. App. 261, 267 (1968). The appellant here has introduced no evidence which would prevent the operation of that presumption. Additionally, the inference of malice may be drawn from the fact of the use of a deadly weapon directed at a vital part of

the body. *McFadden v. State,* 2 Md. App. 725, 728 (1968). The evidence in this case supports the drawing of such inference, and we cannot say that the trial court was clearly erroneous. Maryland Rule 1086.

*Judgment affirmed.*