# RICHARD WAYNE LINDSAY *v.* STATE OF MARYLAND

[No. 70, September Term, 1969.]

*Decided November 17, 1969.*

The cause was submitted to MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Norman Hochberg* for appellant.

*James F. Truitt, Jr., Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City*, and *Howard L. Cardin, Assistant State's Attorney for Baltimore City*, on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Richard Wayne Lindsay, the appellant, has been thrice convicted of the murder of James Brown on 26 May 1963. The first conviction was invalidated by his election to void the indictment under the *Schowgurow* decision.[1] He was re-indicted on 12 May 1966 and his conviction of murder in the second degree under that indictment was set aside by this Court for the reason that the testimony of two witnesses at the first trial was read into the record at the second trial on an insufficient predicate to support the introduction of the testimony. *Lindsay v. State*, 2 Md. App. 330. On remand, he was tried for the third time, convicted of murder in the second degree by a jury in the Criminal Court of Baltimore, and sentenced to 18 years from 26 May 1963.[2] He now attacks the third conviction, contending:

2. At his first two trials he was also tried and convicted of as-
1. *Schowgurow v. State*, 240 Md. 121.

I. The evidence was not sufficient to sustain the conviction.

II. A legal presumption deprived him a basic constitutional right.

III. The trial court erred in instructing the jury.

IV. His "personal, civil, legal, constitutional and inalienable rights" were violated.

I

The appellant challenges the sufficiency of the evidence by presenting two questions. He asks whether the trial court erred in denying a motion for judgment of acquittal [3] and whether the verdict was against the evidence. The denial of the motion made at the close of all the evidence permits us to determine whether the evidence was sufficient to justify its submission to the jury. The test as to its sufficiency is whether the evidence either showed directly or supported a rational inference of the facts to be proved, from which the jury could fairly be convinced beyond a reasonable doubt of the appellant's guilt of murder in the second degree. *Williams v. State,* 5 Md. App. 450, 459. When properly submitted to the jury, the weight of the evidence is a matter for the jury. *Minor v. State,* 6 Md. App. 82, 89.

Homicide was proved. The Chief Medical Examiner of the State of Maryland testified that an autopsy was performed on the body of James Brown. He described

---

sault on Richard Green Clark and the judgment on each of those convictions was also set aside. At his third trial his motion for a separate trial on the assault charge was granted. The record before us does not show the disposition of this charge.

3. The appellant moved for judgment of acquittal at the close of the evidence offered by the State. At that point the court granted the motion as to first degree murder because the appellant had been acquitted of that offense at a prior trial. See *State v. Barger,* 242 Md. 616. The motion was again made at the close of all the evidence. The appellant argues that we should also consider the propriety of the denial of the motion as to second degree murder and manslaughter made at the close of the evidence offered by the State because he offered evidence only through a witness who had previously testified for the State. But the witness was the appellant's when called by him and by adducing evidence from him he withdrew the first motion. Md. Rule 755b.

the nature of the injuries to the deceased in detail. The report of the autopsy was admitted in evidence. It included the opinion that Brown "died of a stab wound of the chest and heart. The manner of death is homicide."

The testimony of Willie Boswell, Jr. was in substance that he saw the appellant, whom he identified, stab Brown in the neck during a "skirmish." He had left a tavern a block away, had walked to his home at 700 Saratoga Street, and upon entering, heard an "ahhh" sound outside. He looked out, saw the appellant and Brown, walked to an adjacent alley and watched the "skirmish." He saw the appellant stick a knife in Brown's collarbone area, stab a second time, kick the now fallen Brown, walk away about five feet, return and pull Brown off the trolley tracks and walk away. He said he did not see Brown with a weapon. This testimony, if believed, was sufficient to show the criminal agency of the appellant. It also showed the use of a deadly weapon. The testimony of the Medical Examiner and the report of the autopsy showed that the weapon had been directed to a vital part of the victim's body. He had been stabbed three times, and one stab wound was in the front of the chest located four inches below the jugular notch and two and a half inches to the left of the midline, so that it overlay the area of the heart. It went into the heart. This was sufficient to show malice, constituting the homicide as murder in the second degree. *Chisley v. State,* 202 Md. 87; *Bagley v. State,* 6 Md. App. 375. The credibility of Boswell and other witnesses was for the jury to determine, as was the weight to be given to their testimony. *Williams v. State, supra.* We do not find that the testimony of Boswell was so contradictory as to come within the ruling in *Kucharczyk v. State,* 235 Md. 334, and such contradiction as may have been present in his testimony went only to its weight. *Wilkins v. State,* 5 Md. App. 8. The case also went to the jury on manslaughter. The determination beyond a reasonable doubt of the existence of malice or the absence of excuse, justification or a mitigating circumstance was for the jury.

As the evidence as above summarized met the test of sufficiency, the case was properly submitted to the jury. Thus there was no error in the denial of the motion for judgment of acquittal.

## II

We stated in considering the sufficiency of the evidence that the showing of the use of a deadly weapon directed at a vital part of the victim's body established malice. This is so because in the circumstances established by the evidence malice was inferred.

Malice is "the intentional doing of a wrongful act to another without legal excuse or justification. It includes any wrongful act done wilfully or purposely." *Chisley v. State,* 202 Md. 87, 105. Malice is the indispensable ingredient of murder; by its presence, homicide is murder; in its absence, homicide is manslaughter.[4] Malice is divided into express and implied malice. Express malice exists whenever an accountable person kills another intentionally unless the killing is justifiable or excusable or unless there is a mitigating circumstance. *Clark and Marshall, Law of Crimes,* 6th Ed., § 10.06, p. 578. But a specific intent to kill is not a requisite of murder. One may commit murder without an actual intent to kill, for the law will imply malice in some unintentional killings and this is called "implied malice" or "constructive malice" or "malice in law."[5] Two of such classes of unintentional killing, committed without justification or excuse or a mitigating circumstance, in which malice is implied, are where (1) there was an intent to inflict great bodily harm; and (2) conceding that there was no actual intent to injure, an act was done or duty omitted wilfully, the natural tendency of which was to cause death or great bodily harm.[6] *Id.,* at 579-580. So implied

---

4. "The essential distinction between murder and manslaughter * * * is the presence or absence of malice." *Chisley v. State, supra,* at 105.

5. See *Holmes, Common Law* 52, 53; 4 *Blackstone, Commentaries* 198, 199; 1 *Hale, Pleas of the Crown* 451.

6. There are four classes, the other two being not here relevant. They are when death was caused during the commission of,

malice in those classes is a matter of drawing inferences from the evidence; upon proof of certain facts, malice is inferred. If a man voluntarily and wilfully does an act, the natural and probable consequences of which is to cause another's death, an intent to kill may be inferred from the doing of the act.[7] So, it has been consistently held, that in the absence of excuse, justification, or a mitigating circumstance,[8] malice is inferred from the use of a deadly weapon directed at a vital part of the body. *Chisley v. State, supra; Bagley v. State, supra.*

The appellant claims that there is a presumption that

---

or attempt to commit, some other felony; and when death was caused while resisting lawful arrest or obstructing an officer in an attempt to suppress a riot or affray.

*Hochheimer, Criminal Law,* 1st Ed., § 674, p. 394, states, "An act done for the purpose of committing a felony is murder, only if known to be dangerous to life and likely in itself to cause death. The old doctrine, that a mere intent to commit any felony renders a homicide murder is 'as much mistaken in law as it is repugnant to common sense and humanity and would probably be repudiated by every modern tribunal.' "

*Clark and Marshall, Law of Crimes, supra,* § 10.07, p. 587 limits the felonies to burglary, arson, rape, robbery and larceny, citing *Stephen, Digest of the Criminal Law,* art. 223.

In Maryland, by statute, murder is divided into first degree and second degree. All murder perpetrated by means of poison, or lying in wait, or by any kind of wilful, deliberate and premeditated killing, Md. Code, Art. 27, § 407; or committed in the perpetration of, or attempt to perpetrate any rape, sodomy, mayhem, robbery, burglary, or in the escape from any jail or penal institution, § 410; or in the perpetration of or attempt to perpetrate any arson, § 408; or in the burning or attempting to burn specifically designated structures, § 409, shall be murder in the first degree. All other kinds of murder shall be deemed murder in the second degree, § 411. The statutes, thus, do not define "murder", but merely designate the degree of murder. They leave the common law sense of murder—unlawful homicide with malice aforethought—unimpaired, seeking only to graduate the measure of punishment according to the circumstances under which murder is committed. *Davis v. State,* 39 Md. 355, 374. "Murder is still a common law crime in Maryland, although it is divided into two degrees carrying different penalties." *Webb v. State,* 201 Md. 158, 161.

7. Under the so-called "felony-murder" rule, the decisions at common law did not require that the act done shall have been of such a nature as to endanger life, or threaten great bodily harm, but the malice necessary to constitute murder is implied from the fact that the accused was committing or attempting to commit a felony. *Clark and Marshall, Law of Crimes, supra,* § 10.07, p. 588.

8. We think that "provocation" is properly within those terms.

"all homicides are murder in the second degree in which malice aforethought exists as a matter of law." He urges that this presumption is in direct conflict with the presumption of innocence and that if one must yield to the other, the presumption of innocence must be left unimpaired. This presumption is broader in scope than the inference of malice arising from an act, the natural tendency of which was to cause death or great bodily harm, for conceivably the presumption would arise only from the fact of a homicide. He assumes the existence of this presumption from language in *Chisley v. State, supra,* at 105:

> "The law presumes all homicides to be committed with malice aforethought and to constitute murder. The burden is on the accused to show circumstances of alleviation, excuse or justification, which will reduce the offense to manslaughter. * * * Where the law divides murder into grades, such a homicide is presumed to be murder in the second degree and the burden is on the State to show that the killing was wilful, deliberate and premeditated, if the crime is to be elevated to first degree murder. * * *." (citations omitted).[9]

But we need not decide whether *Chisley* actually determined that there is a presumption such as the appellant suggests, separate and distinct from and broader in scope than the rule with respect to "implied malice;"[10] or, if

9. We note that since *Chisley* the Court of Appeals has repeatedly pointed out that the charge of the trial court to the jury in a murder case, in referring to the presumption that all homicides are committed with malice, should include the instruction that malice may be inferred "in the absence of justification, excuse or some circumstance of mitigation." *Davis v. State,* 204 Md. 44, 51. See also *Davis v. State,* 237 Md. 97, 103; *Gunther v. State,* 228 Md. 404, 411; *Bruce v. State,* 218 Md. 87, 98. This Court has consistently stated the rule in those terms. See *Dyson v. State,* 6 Md. App. 453, 456; *Bagley v. State,* 6 Md. App. 375, 379; *Jacobs v. State,* 6 Md. App. 238, 242; *Williams v. State,* 2 Md. App. 170, 176; *Leyva v. State,* 2 Md. App. 120, 124.

10. We note that in the cases decided by the Court of Appeals and this Court in which the presumption stated in *Chisley,* as ex-

there is such a presumption, whether it is now constitutional. See *Leary v. United States,* 89 S. Ct. 1532, decided 19 May 1969. Resort to such a presumption is not necessary to a determination of the instant case; it may be resolved, as we have done, by an application of the rule with respect to implied malice. We shall, therefore, confine our discussion to the question of the constitutionality of the rule whereby malice may be inferred from acts of the accused apart from the mere fact of a homicide committed by him.[11]

The inference of malice under the implied malice rule is comparable to the rule under which there is an inference that a person in exclusive possession of recently stolen goods is the thief in the absence of satisfactory explanation of non-culpatory possession. As to each rule the inference arises from the proof of facts—with respect to the "possession" rule, the facts that goods were recently stolen and that the accused is in exclusive possession of them and with respect to the "malice" rule, the facts that the accused committed a homicide and that it was committed with an actual intent to injure or by an act the natural tendency of which was to cause death or great bodily harm. In each the inference is rebuttable—with respect to the "possession" rule, by a reasonable non-culpable explanation by the accused of the possession of the goods and with respect to the "malice" rule by a showing by the accused that the homicide was

---

plained in subsequent decisions, is set out, it appears that the facts permitted implied malice to be inferred. We are not aware of a case in which malice was "presumed" only from the fact of a homicide and without a showing of an act by the accused sufficient to show an intent to inflict great bodily harm, or without the showing of an act the natural tendency of which was to cause death or great bodily harm. We do not consider the "felony-murder" prescribed by statute in this connection.

11. The constitutional issue was not expressly raised or decided below and ordinarily would not be before us for decision. Md. Rule 1085. But the overruling of the motion for judgment of acquittal as to second degree murder necessarily rested on the basis that an inference of malice could be validly drawn in the absence of excuse, justification or a mitigating circumstance, and thus implicitly, the constitutionality of the rule that permitted the inference was raised and decided.

108

excused, justified or extenuated. As to each rule the reasonableness and legality of permitting the inference is explained by the rule that there may be drawn an inference of one fact from proof of another or others if there is some rational connection between the fact or facts proved and the ultimate fact inferred so that the inference drawn from the proof is not so farfetched as to be arbitrary. See *Anglin v. State*, 244 Md. 652, 656-659. Anglin argued that the "possession" rule was unconstitutional, claiming that the holding of *Griffin v. California*, 380 U. S. 609 (there can be no comment at the trial on the failure of the accused to take the stand) and a suggestion in footnote 37 in *Miranda v. Arizona*, 384 U. S. 436, 468 ("* * * it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation") combined to require that no presumption or inference may be drawn from his failure to explain how he came into possession of the goods. The Court held that these claims on the constitutional issue must fail.

> "It is not unreasonable to require the possessor to cause the facts of his possession to be explained if he desires to overcome the prima facie case against him arising from the permissible inference of fact flowing from his possession, because the facts as to that possession are peculiarly within his knowledge and ordinarily are not known or available to the State." 244 Md. at 652.

We think the same rationale is apposite to the "implied malice" rule. Nor do we see any violation of the presumption of innocence. The inference of malice is disputable and that it arises does not shift the burden of proof to the accused. The inference merely provides *prima facie* evidence of malice, although it may be of controlling weight unless dispelled by the circumstances or the acts

of the accused are accounted for in some way to show that malice did not in fact exist. But even in the face of the inference the accused stands innocent until proved guilty beyond a reasonable doubt; the risk of non-persuasion of the trier of fact remains with the prosecution. Just as where there is evidence of express malice, the determination of malice *vel non* beyond a reasonable doubt is for the trier of facts. Nor do we think that the inference violates due process of law. In *Leary v. United States, supra,* at 1548, the Court found that a criminal statutory presumption "must be regarded as 'irrational' or 'arbitrary', and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." [12] Applying this test to the inference of malice here we believe it can be said with substantial assurance that the fact of malice is more likely than not to flow from the proved facts on which it was made to depend and so was not arbitrary or irrational. It is readily distinguishable from the presumption held unconstitutional in *Leary.*

We hold that the "implied malice" rule is constitutional. We see no violation of the constitutional rights of an accused for society, in an attempt to achieve maximum protection for human life, to read in the mental element of malice whenever a defendant, acting without provocation, justification or excuse, could or should have foreseen that the consequences of his behavior might result in death to another person. See *Clark and Marshall, Law of Crimes, supra,* § 10.06, p. 577.

---

12. In *Leary* the Court did not reach the question whether a criminal presumption which passes muster when so judged must also satisfy the criminal "reasonable doubt" standard of proof of the crime charged or an essential element thereof depends upon its use. 89 S. Ct. at 1548, note 64. But the Court of Appeals said in *Chisley v. State, supra,* at 107: "It is generally established and certainly is necessarily the law of Maryland, where the jury is the judge of the law and the facts, that where there is evidence to go to the jury, whether or not there was malice * * * must be for the jury to determine." The inference provides evidence of malice to go to the jury.

## III

As the appellant recognizes, having made no objection to the instructions to the jury, he may not assign error as of right on appeal. Md. Rules 756f and 756g. However, he claims plain error material to his rights in the instructions taken as a whole and particularly as to an alleged redundancy by the judge in his definition of malice and the failure to mention "the geographic-time conflict of testimony between State witnesses," and asks that we take cognizance of and correct the alleged error. We have carefully reviewed the instructions and see no merit in the claim. The judge explained the presumption of innocence and the burden of proof, and defined murder, manslaughter, express malice, and implied malice. His instructions were full and complete and correctly stated the law. We find no plain error material to the appellant's rights which we feel we should recognize and correct.

## IV

The fourth contention, incorporated in the appellant's brief at his insistence, consists of numerous allegations of denial of rights. Some of the allegations are factually incorrect, some are not supported by the record and some challenge procedures in the conduct of the trial which were patently proper. His complaints about his counsel on appeal appear to be without real substance and he raised no objection below to his trial counsel. As presented, the allegations are without sufficient specificity or clarity and we do not consider them. We note that the appellant claims that Willie Boswell, Jr., a State's witness, was not present at the trial. It is clear from the transcript of the proceedings that Boswell was present, was called, sworn, was examined by the State and cross-examined at length by defense counsel.

We point out again that there is no provision in the Maryland Rules of Procedure for the filing of supplemental or amended briefs *pro se*. See *Simms v. State,* 4 Md. App. 160; *Jones v. State,* 3 Md. App. 608; *Fabian v. State,* 3 Md. App. 270.

*Judgment affirmed.*