## LEONARD WIGGINS, JR. *v.* STATE OF MARYLAND

[No. 229, September Term, 1969.]

*Decided February 3, 1970.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*James R. White* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles*

*E. Moylan, Jr., State's Attorney for Baltimore City,* and *Michael E. Kaminkow, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

The question in this case is whether the evidence was sufficient to prove that a homicide committed by Leonard Wiggins, Jr. (appellant) was murder in the first degree as found by the court sitting as a jury in the Criminal Court of Baltimore. Both appellant and the State argue on the predicate that the court found that the murder was committed in the perpetration of a robbery. Appellant claims and the State disputes that an intent to deprive the victim permanently of his property was not established.

## THE EVIDENCE

As to the circumstances surrounding the actual commission of the homicide, the court found that "the only credible testimony is that given by Mamie Coit," a witness on behalf of the prosecution. Mamie Coit testified that about 10:00 P.M. on 14 April 1968 she was in the vicinity of Fremont Avenue and Pierce Street in Baltimore City. She saw appellant, also known as Dink, whom she identified, a boy known as Willie and a boy known as Sam on the corner of Fremont Avenue and Pierce Street. An old man was coming down the street and appellant kicked him in the seat of his pants. The old man had a "long knife" which was first down in his belt and "then he put it in his hand." The boys were running around him and he was swinging the knife at them. The witness was not able to say whether or not the man was under the influence of alcohol. Someone tripped the man and he fell in the gutter. He lay there a few minutes and the boys took "everything out of his pockets." Sam hid the knife under the steps. "He was coming back to get it he said." Then all the boys went to a bar about half a block away. Mamie Coit and a friend named Ann Turner remained at the scene telling a boy named Stanley what

had happened. She said appellant, Sam, Willie and a boy she knew as Little Joe came back with a fifth of Thunderbird wine. They passed it around and "when they got finished, Sam, Willie and Ann left. Appellant asked if he could walk her home. "I said, 'I don't care'. So we, me, Dink (appellant) and Little Joe was going down Pierce Street." She saw the same old man she had seen earlier standing on the steps of an empty house in the 800 block Pierce Street, knocking on the door. This was about "a half hour or more" after the incident involving the boys and the man. Appellant said, "Don't nobody live there." The old man said, "I live here." Appellant said, "You're a damned liar." Appellant grabbed the man by the collar and dragged him off the steps. "Then he beat the man with his fists, the old man with his fists * * * in the face. * * * Then he took this drain pipe, and the man was an old man, he was laying on the ground. He took the drain pipe and started hitting the man across the back and head and every place. * * * [The man] was saying, 'All right. Have mercy.' Then Leonard Wiggins said, 'Fuck that Lord have mercy.' Just like that." During the beating the man was hollering. He did not at any time strike appellant nor did she see a weapon in the possession of the man. After appellant had beat the man with the drain pipe, he held the man by the arms from the back and "told Little Joe to hit him, to beat him, and Little Joe started to hit [the old man] with his fists and blood started coming out of his mouth. * * * Then Little Joe hold the man while [appellant] beat him [some more]. * * * Blood was coming out of his eyes. * * * Then I started screaming and they told me to shut up." Appellant twisted her arm. "They took the old man's clothes off, they stripped him. Then they took the man's belt and [appellant] beat the man with the belt. * * * He just kept on beating the man and beating the man, and he said, 'I'm going to kill you.' He kept on saying, he was going to kill that old man." The old man was crying. Mamie Coit went down the street to her home at 813 Pierce Street. Appellant and Little Joe caught up to her and followed her into the hall, but she shut the

living room door and they left. She saw them going down the street. The old man was still lying in the street naked, not moving. It was about 11:30 P.M. She told the police about the incidents the next morning, apparently when they came to her home. Later that day she pointed out appellant to the police when she saw him standing on the corner. On cross-examination she said she did not see "what was done with all of [the man's] clothes." On redirect examination she said that appellant and Little Joe took the man's clothes off, "Threw them on the ground and grabbed the belt and started beating the man." When they left they did not take the clothes. She said that on the first encounter with the man appellant and Little Joe went "in his pockets, and they found two pieces of old rings and skeleton keys."

About 5:00 A.M. on 15 April 1968 the police found the victim "lying in the street in front of 841 Pierce Street about a foot and a half from the gutter. The man was not breathing. There was a coat over the upper portion of the body "like it was thrown over him * * * He didn't have anything else. He was badly battered." In the back of the house by a vacant lot they found a pair of trousers.

The victim was pronounced dead on arrival at Provident Hospital at 5:30 A.M. on 15 April. An Assistant Medical Examiner who performed the autopsy said that the body was clothed in a gray jacket and two shirts. "That was all. He had no trousers, no underwear." He described the extensive external and internal trauma of the body in detail. The diagnosis was that the cause of death was "a craniocerebral injury to the head, which included the subdural hematoma and subarachnoid hemorrhage around the brain." It was his opinion that the injuries were caused by blows as distinguished from a fall. There was a high alcohol level in both blood and urine; with such an alcohol level the average person "would find it very difficult to defend himself."

## THE LAW

Md. Code, Art. 27, § 410 provides in relevant part:

> "All murder which shall be committed in the perpetration of, or attempt to perpetrate, any * * * robbery * * * shall be murder in the first degree."

Under this statute it is not required that the killing be wilful, deliberate and premeditated to elevate the homicide to murder in the first degree. See *Lindsay v. State,* 8 Md. App. 100.

Robbery is the larceny [1] from the person of another by violence.[2] *Osborne v. State,* 4 Md. App. 57. All the elements necessary to constitute larceny are necessary to constitute robbery. *Halcomb v. State,* 6 Md. App. 32, 37. One of the elements in larceny is the asportation of the property stolen. It is not necessary that the property shall be carried to any particular distance, or that possession and control shall be retained for any particular length of time in the possession of the thief.

> "The slightest asportation is sufficient. The trespasser must acquire complete control over the property, but the slightest entire removal of it from the place it occupies, and a temporary control of it, even for a moment is enough. It has been said that removal to the distance of

---

1. In Maryland the larceny may be grand or petit. The requirement is only that something of value be taken. *Ham, et al v. State,* 7 Md. App. 474; *Love, et al v. State,* 6 Md. App. 639.

2. The violence may be actual as by the application of physical force or constructive as by the putting in fear. Some early writers defined robbery as a taking by violence from the person of another, putting him in fear, or as a taking by violence from the person of one put in fear, 3 Coke, Institutes 68; 1 Hale, Pleas of the Crown 532; 1 Hawkins, Pleas of the Crown, c. 34, p. 147, thus requiring both violence *and* putting in fear. This is erroneous. *Clark & Marshall, A Treatise on the Law of Crimes,* 6th Ed., § 12.14, p. 792. It is only in the absence of actual violence that putting in fear (constructive violence) is required. Conversely, if actual violence accompanies the larceny, it is not necessary that the victim be placed in fear. See *Williams v. State,* 7 Md. App. 683.

'a hair's breath' is sufficient." *Clark & Marshall, Law of Crimes*, 6th Ed., § 12.05, p. 738.

So in a robbery if the assailant acquires complete possession and control of the property, even for an instant, the offense is complete, though he immediately afterwards drops or abandons it, or returns it to the person robbed. *Id.*, § 12.12, p. 785; *Osborne v. State*, 4 Md. App. 57, 60.

Another element of larceny is the larcenous intent; so every robbery embraces a larcenous intent. This means that every robber must intend to steal the property taken. The crucial ingredient of larcenous intent is that the intent be to deprive the owner (within the applicable definition of that term, see *Kyle v. State*, 6 Md. App. 159, *Frazier v. State*, 5 Md. App. 88) permanently of his property. *Halcomb v. State, supra,* at 37 and cases therein cited.

An attempt to commit a crime is an act done in pursuance of a criminal intent falling short of the actual commission of the crime, coupled, at least, with the apparent ability to commit the crime intended. *Reed v. State*, 7 Md. App. 200; *Makins v. State*, 6 Md. App. 466; *Boone v. State*, 2 Md. App. 80. So attempted robbery may be predicated upon a finding of intent to steal goods from the person of another by violence but without the consummation of the larceny. See *Thompson v. State*, 5 Md. App. 191.

### THE VERDICT

In denying a motion for judgment of acquittal at the close of all the evidence and rendering a verdict of murder in the first degree the court said:

> "As the Court must conclude from [the evidence which it found to be credible] that death resulted after a beating, and as the clothing of the deceased was taken from him after the beating, then the Court must conclude from all the circumstances and the testimony, that robbery was contemplated."

It is perfectly apparent, as the State concedes, that the court arrived at its verdict under the so-called felony-murder statute. It made no factual findings that the killing was wilful, deliberate and premeditated. See Md. Code, Art. 27, § 407. There were two separate and distinct incidents involving appellant and the victim. When appellant first met the victim he assaulted, beat and robbed him. On the second encounter appellant assaulted him and beat him to death. The court made clear that the robbery during the first encounter would not in itself support that the killing was committed during the perpetration of a robbery; if the felony-murder statute is applicable it must be on the basis of a crime designated in the statute, which appellant perpetrated during the second encounter at which the victim was murdered. The statute includes the crimes of robbery and attempted robbery.

The remarks of the court above quoted are fairly susceptible of two meanings. They could be construed as meaning that it found the murder was committed in the perpetration of a robbery as appellant and the State construe them. Or they could mean that the court found that the murder was committed in an attempt to perpetrate a robbery.[3] The definition of "contemplate" in Webster's

---

3. We note the remarks of the court in denying a motion for judgment of acquittal at the close of the evidence offered by the State which appellant withdrew by offering evidence. Md. Rule 755 b. Arguing against the motion, the State, urging that the killing was wilful, deliberate and premeditated, alternatively argued that it was a felony-murder. Appellant argued to the contrary with respect to the alternative argument and during this argument the court asked, "Isn't it a fact that clothes were taken [at the time of the beating], regardless of what they did do with them? Wouldn't that make a robbery?" Counsel replied that the eyewitness testified that the clothing was left "right there next to" the victim. The court then asked, "But they carried them what distance? They took the clothes off of him and carried them someplace and laid them down. Wouldn't that be sufficient to constitute robbery?" Counsel replied that this would not show "a taking away with larcenous intent." The court then ruled, merely saying, "I am satisfied from all the evidence that I have heard and from all the evidence in the case, that the State has made out a case, and I'll deny your motion." Of course, the denial of the motion was proper, for at that point it was clear that the evidence was suffi-

Third International Dictionary, unabridged, includes "to have in view as a purpose: anticipate doing or performing: plan on: intend: plan." In the American Heritage Dictionary of the English Language the definition of the word includes "to intend or anticipate." Thus the question before us is one of the sufficiency of the evidence and if the evidence was sufficient to establish either that appellant committed the murder in the perpetration of a robbery or in an attempt to perpetrate a robbery, the verdict was proper.

## THE SUFFICIENCY OF THE EVIDENCE

As the court was the trier of fact, the clearly erroneous rule is applicable. We may not set aside the judgment on the evidence unless the court was clearly wrong, giving due regard to the opportunity of the lower court to judge the credibility of the witnesses, Rule 1086. Not only the credibility of the witnesses but the weight of the evidence were matters for it. The test is whether the evidence either showed directly or supported a rational inference of the facts to be proved, from which the trial court could fairly be convinced, beyond a reasonable doubt, of appellant's guilt of the offense charged. *Williams v. State,* 5 Md. App. 450.

As presented, the question of the sufficiency of the evidence does not go to the criminal agency of appellant. As to the *corpus delicti,* it does not go to the fact of the homicide. It goes only to the issue whether the homicide was committed in the perpetration of, or attempt to perpetrate, a robbery, and this, in turn, depends upon whether there was a taking or attempted taking of the personal property of the victim by violence and with a larcenous intent. Appellant does not claim that actual violence upon the person of the victim was not proved, nor does he contend that articles of clothing were not taken from the possession of the victim. It is clear that the direct evidence was sufficient for the court to find that ap-

---

cient to establish murder in the first degree as being a wilful, deliberate and premeditated murder, if for no other reason.

pellant acquired complete possession and control of the trousers and belt of the victim so as to satisfy the element of asportation. Thus the issue is narrowed to whether the evidence was sufficient for the trial court to find from the evidence (1) that the trousers and belt were taken with an intent to deprive the victim of them permanently in which case robbery would have been committed, or (2) that there was such larcenous intent to steal other personal property of the victim, but that the larceny was not consummated, in which case there would have been an attempted robbery.

We cannot say that the court was clearly erroneous on a finding that the trousers and belt were taken with intent to deprive the victim of them permanently. The facts and circumstances of the first encounter between appellant and the victim were properly admissible as tending to show a larcenous intent. "If proof of another crime explains or accounts for the crime for which the accused is on trial, it is relevant and competent. * * * [C]ollateral offenses may be shown to prove the mental processes or mental attitude of the accused, such as motive or intent. *Wood v. State*, 191 Md. 658, 664; *Jennings v. State*, 8 Md. App. 312 (1969). We do not believe it to be an irrational inference that the trousers were taken from the victim with a larcenous intent, if not present at the time the second assault started, at least formed during the course of the beating. There was no other explanation as to why the trousers were removed to be gleaned from the evidence [4] (appellant not only denied beating the victim at the second encounter but even denied his presence at that time). It did not appear that there was an attempt to beat or mutilate the lower torso or legs of the victim.[5] And we do not feel that the infer-

---

4. We note that at the hearing for a motion for a new trial, the court asked defense counsel, then arguing the lack of larcenous intent in taking the trousers, "Why would you have to take his clothes." Counsel said, "Your Honor, you might just as well say, why was he beaten about the head and face. If you look at this thing in toto, the inference is that the entire thing was senseless or why hit him more than once?"

5. The wounds as described by the Assistant Medical Examiner

ence is precluded by the testimony of Mamie Coit that the clothes were left by the victim. She was screaming during the beating and left the scene, immediately followed by appellant. The court could have concluded that despite appellant's intent to steal the trousers when he took them from the victim, this intent may have been thwarted when the eyewitness left the scene and appellant in his haste to follow her, perhaps to prevent her seeking assistance, (which is supported by his even entering her house) left the property on the street. And has been pointed out, even voluntary abandonment of his original intent to steal the property would not insulate him against the crime of robbery. On a finding of an intent to steal the trousers taken, the murder would have been committed in the perpetration of a robbery. See *Hadder v. State*, 238 Md. 341, 354-355; *Midgett v. State*, 216 Md. 26, 42; *Bradburn v. State*, 4 Md. App. 248, 251. Cf. *Halcomb v. State, supra,* in which there was evidence from which the jury could have found that the property was taken from an officer by the defendant to disarm him and not with the intent to steal it. We found error in the refusal to grant a requested instruction to the effect "That if the jury finds that the defendant, by taking and carrying away the equipment of the officer * * * merely intended to disarm the officer, without an intent to steal his equipment at the time it was taken and carried away, then the verdict should be 'not guilty'" of robbery. We were careful to point out that our holding did not mean that the jury could not have concluded that a larcenous intent did in fact exist, nor did it mean that no larcenous intent could be found because the items taken were subsequently discarded or abandoned. 6 Md. App. at 39.

Even if it be deemed that appellant did not have a larcenous intent to steal the trousers themselves, we think it would be a rational inference that appellant took the

---

were on the head and upper part of the body of the deceased. There were "several fresh abrasions on the anterior surfaces of the knees" but these were characterized by the doctor as the type of injury sustained when one falls on the knees.

trousers with an intent to steal whatever was in them, hoping to find something, when there was an opportunity to search them, which he had missed when he searched the victim on the prior assault. That in the circumstances he did not have the opportunity to search the trousers and steal whatever may have been in them did not preclude the finding of an intent to do so. The finding of this intent would be sufficient to establish that appellant committed the murder in an attempt to perpetrate a robbery.

In short, the finding of the requisite intent was a matter for the trier of fact. See *Szewczyk v. State*, 7 Md. App. 597, 601. Intent to steal is subjective; it need not be directly and objectively demonstrated but may be inferred from a totality of the circumstances. *Johnson v. State*, 5 Md. App. 540, 545; *Moore v. State*, 3 Md. App. 676, 679. We cannot say that the lower court was clearly erroneous in its judgment on the evidence since it could have properly found an intent to steal so that the murder would have been committed either in the perpetration of a robbery or in an attempt to perpetrate a robbery.[6]

Since we have found that the lower court did not err in its application of the felony-murder statute, we do not reach the contention that the proper performance of our function on appellate review in the circumstances would not permit our sustaining the conviction as being murder in the first degree because we may have concluded that the evidence was sufficient to establish that the killing was wilful, deliberate and premeditated under the provisions of Code, Art. 27, § 407.

*Judgment affirmed.*

---

6. That appellant was not charged and convicted of robbery was not material. And had he also been charged with the robbery and found not guilty, a verdict of guilty of murder in the first degree as committed in the perpetration of the robbery could stand. See *Ledbetter v. State*, 224 Md. 271.