# WILBUR McCORD *v*. STATE OF MARYLAND

[No. 389, September Term, 1971.]

*Decided March 28, 1972.*

The cause was argued before THOMPSON, POWERS and CARTER, JJ.

*Kenneth A. Pressman* for appellant.

*Josef E. Rosenblatt, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Richard P. Bricken, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

CARTER, J., delivered the opinion of the Court.

The appellant, Wilbur McCord, was convicted of murder in the second degree and robbery with a dangerous and deadly weapon by Judge James W. Murphy, sitting non-jury in the Criminal Court of Baltimore, and sentenced to prison for 30 years and 10 years respectively, sentences to run consecutively. The two charges were contained in separate indictments which were consolidated for the purpose of trial. The appellant appeals from these judgments. His first four contentions hereinafter set forth can be summarily dismissed. His fifth contention is that the evidence was legally insufficient to warrant his convictions.

## I—IV

In his first contention the appellant raises the question

of the adequacy of his counsel. Since the record shows that this issue was not raised in the trial court, it is not before us for review on this appeal. See *Small v. State*, 7 Md. App. 147, 150; Md. Rule 1085.[1]

His second contention, concerning the denial of his right to separate trials on the two indictments, is required to have been raised before evidence was received. See Md. Rule 735. The record shows it was not so raised. We therefore hold that the issue is not before us on this appeal. Md. Rule 1085.

The third contention concerns the appellant's claim that he was denied due process because he was not provided with a private psychiatrist of his own selection to assist him in presenting his defense of insanity. Since the record also shows that this question was not raised below, it is likewise not before this Court on appeal. Md. Rule 1085.

The appellant's fourth contention asserts that he was denied his constitutional right to a jury trial. The appellant's personal election of a court trial, after having been fully advised of his right to a jury trial, is set forth in the record.

The relevant evidence on the charges of murder and robbery with a dangerous and deadly weapon showed that on September 17, 1970, about 7:30 p.m. Green E. Perry, a security guard on duty in a Food Fair supermarket located in the Broadway Shopping Center on North Bond Street in Baltimore City, was shot in the chest, face, abdomen and arms, and died within an hour. The testimony of a customer in the supermarket at the time showed that upon hearing what sounded like a pistol shot, she had moved into the aisle from which the sound came and had seen the guard standing there with a young man. She then noticed two red spots appear on the guard's

---

1. The record shows, however, that the only specific complaint of the appellant on this issue was the failure of counsel to file a motion for a new trial. It further shows that his right to this procedure was fully explained to him by his counsel in open court after verdict and before sentence. Thereafter the appellant had expressly advised the court that he did not wish to file the motion.

shirt. The guard then walked toward the front of the store and the young man ran out the front door. The testimony of a clerk in the store showed that about 7:30 p.m., while he was checking out a customer, he heard noises that sounded like shots from within the store. He looked in a mirror, saw someone pointing "what may have been a gun, down the aisle" and saw the guard's head and shoulders. He than heard at least two more shots. A few seconds later the guard, bleeding and dazed, came from the aisle. The "other person" then ran down the aisle and out the front door of the store. This witness further testified that he had observed the profile of the "other person" when he was about 20 feet from him. He made a qualified identification at the trial by testifying that the appellant "resembled" the other person who had run from the store but that he could not be certain of the identification.

Louis Blevis, manager of Paul's Liquor Store located about 1½ blocks from the supermarket, testified that about 8:30 that evening the appellant with a drawn pistol had appeared at the store, demanding money, a fifth of brandy, and some beer. At this time he informed Mr. Blevis, "I've just shot a man up in the Food Fair and I'll do it again." The appellant then informed Donald Blanks, a clerk in the store, that he had "just shot a fellow" and while he did not want to hurt Blanks, he would do so if he did not give him the cash in the store. Mr. Blanks described the appellant's condition at the time as "a little high" but not drunk and that he appeared to know what he was doing. Pursuant to the appellant's direction, Mr. Blevis had placed a fifth of brandy, some beer and the money ($200) from the cash register in a cardboard box on the floor when the police arrived in response to a silent alarm touched off by Mr. Blevis. The appellant was then relieved of his gun and placed under arrest.

Officer Mathews testified that he responded to a robbery alarm at Paul's Liquor Store at about 9:15 p.m. Upon his arrival he saw the appellant standing behind Mr. Blevis with a gun pointed in Mr. Blevis' direction.

He then took the gun from the appellant and found it to be a .38 caliber revolver belonging to Mr. Blevis. This gun was ordinarily kept in a drawer near the cash register. Mr. Blevis stated to Officer Mathews in the presence of the appellant that on this occasion the appellant had brought a .22 caliber revolver into the store, had placed it in the drawer near the cash register and had then taken the .38 caliber pistol in exchange. He further stated he noticed nothing abnormal about the appellant at the time of his arrest.

Officer White testified that he was assigned to the Crime Laboratory of the Police Department. He had test fired the .22 caliber revolver which the appellant had brought into the liquor store. The miscroscopic examinations of the markings on the test-fired bullet compared exactly with the markings on the three bullets that had been taken from the body of the deceased. Basing his testimony on this comparison, the witness positively identified the .22 caliber pistol which the appellant had brought into the liquor store as the gun that had fired the three bullets taken from the body of the deceased.

The appellant testified that he was an alcoholic and had taken treatments at various clinics in an effort to overcome his problem. On September 17 he had received his pay check and on his way home he had stopped to have some drinks with his fellow workers at about 3:00 p.m. After the group had consumed more than a quart of liquor between 3:00 and 5:00 p.m., they came into town and shot pool. He further stated that he did not recall anything he did after 5 p.m. until he woke up the next morning about 8:30 in jail.

The State called Officer Wagner in rebuttal. He testified that when he had advised the appellant of his constitutional rights at the police station at 10:40 p.m. on the evening of the shooting, the appellant appeared completely normal. At that time, the appellant had given him the name, address, and telephone number of his attorney, and had himself telephoned his attorney.

At the conclusion of the evidence, the appellant made

a motion for a judgment of acquittal in respect to the murder and robbery charges. The motion was denied.

## V

### SECOND-DEGREE MURDER

Some of the facts shown by the undisputed evidence which are material in determining whether the proof is legally sufficient to establish that the appellant shot and killed the deceased are: 1) that the appellant was described by an eyewitness to the shooting to have "resembled" the killer 2) that when the appellant entered a liquor store located within two blocks of the Food Fair about an hour after the shooting, he demanded money at gunpoint and said, "I've just shot a man up in the Food Fair and I'll do it again" and 3) that three bullets recovered from the body of the deceased were fired from the .22 caliber revolver which the appellant had brought into the liquor store.

It is well settled that the test of the sufficiency of the evidence in a criminal case is whether it shows directly or supports a rational inference of the facts to be proved from which the trier of the fact could fairly be convinced beyond a reasonable doubt of the defendant's guilt of the offense charged. *Williams and McClelland v. State,* 5 Md. App. 450, 459; *Metz v. State,* 9 Md. App. 15, 23.

Considering the totality of the evidence including particularly the above enumerated facts, we have no difficulty in concluding that the trial court was not clearly in error in finding beyond a reasonable doubt that the appellant shot and killed the deceased.

In defining the various degrees of unlawful homicide, this Court said in *Whitehead v. State,* 9 Md. App. 7, at 9-10:

> "* * * In this jurisdiction murder may be in the first degree or second degree as designated by statute. All murder perpetrated by means of poison, or lying in wait, or by any kind of wil-

ful, deliberate and premeditated killing, Md. Code, Art. 27, § 407; or committed in the perpetration of, or attempt to perpetrate any rape, sodomy, mayhem, robbery, burglary, or in the escape from any jail or penal institution, § 410; or in the perpetration of or attempt to perpetrate any arson, § 408; or in the burning or attempting to burn specifically designated structures, § 409; shall be murder in the first degree. All other kinds of murder shall be deemed murder in the second degree, § 411. Manslaughter is homicide without malice aforethought; it is the absence of malice aforethought which reduces murder to manslaughter. *Chisley v. State,* 202 Md. 87, 105."

In holding that the malice necessary to constitute murder in the second degree may be inferred under certain circumstances, we said in *Lindsay v. State,* 8 Md. App. 100 at 105:

"* * * If a man voluntarily and wilfully does an act, the natural and probable consequences of which is to cause another's death, an intent to kill may be inferred from the doing of the act. So, it has been consistently held, that in the absence of excuse, justification, or mitigating circumstance, malice is inferred from the use of a deadly weapon directed at a vital part of the body. *Chisley v. State, supra; Bagley v. State, supra,* [6 Md. App. 375]."

The autopsy of the deceased showed he had been shot in the vital parts of his body, that is, in his left chest, his face, and in his abdominal region. There was no evidence to show that the shooting was caused by any provocation or that it was justified or excusable. Applying the rationale of *Lindsay, supra* to the definitions set forth in *Whitehead, supra,* we further conclude that the trial court was not clearly in error in finding beyond a rea-

sonable doubt that the appellant shot and killed the deceased with malice aforethought and was therefore guilty of murder in the second degree.

## V

### ROBBERY

In *Williams v. State,* 7 Md. App. 683, we said at 685:

> "* * * Otherwise stated, robbery is 'the felonious taking and carrying away of the personal property of another from his person or in his presence, by violence, or by putting him in fear.' Clark and Marshall, *Crimes,* (6th Ed.), § 12.09, p. 781; *Darby v. State,* 3 Md. App. 407, 413."

Md. Code, Art. 27, § 488 (robbery with a dangerous or deadly weapon) does not create a new offense but merely provides a more severe penalty where the robbery is committed by the use of a dangerous or deadly weapon. See *Jones v. State,* 3 Md. App. 608. In *Osborne v. State,* 4 Md. App. 57, this Court, speaking through Chief Judge Murphy in reference to the characteristics of the necessary elements of trespass and asportation in the crime of robbery, said at 60:

> "* * * More specifically, to constitute robbery, the property *must, as in larceny, be both taken and carried away,* so that an asportation of the stolen property, as well as a trespass, would appear to be indispensable elements of the offense. To constitute an asportation, the robber, like the thief in larceny, must acquire complete control of the property at least for an instant, but the slightest asportation is sufficient to satisfy that element of the offense. * * *" (emphasis supplied.)

In speaking of the trespassory taking necessary to constitute larceny, Clark and Marshall, *Law of Crimes* (7th Ed.), § 12.06 states at 837:

"* * * To amount to a trespass, and there-
fore to constitute larceny, the property must be
taken from the actual or constructive possession
of the owner, and it must be taken without his
consent. * * *"

In speaking of the characteristics of a sufficient aspor-
tation as an essential element of larceny, § 12.05 sets
forth at 833:

"While some asportation is essential, it is not
necessary that the property shall be carried to
any particular distance, or that possession and
control shall be retained for any particular
length of time. The slightest asportation is suf-
ficient. This requirement is fulfilled if accused,
even *for a fleeting instant, directs the movement
of the article in such a way as to supersede the
dominion of the owner.* The trespasser must ac-
quire complete control over the property, but
the slightest entire removal of it from the place
it occupies, and a temporary control of it even
for a moment, is enough. It has been said that
removal to the distance of a 'hair's breadth' is
sufficient." [2] (emphasis supplied.) *Ibid.*

See also *Wiggins v. State,* 8 Md. App. 598, pp. 603, 604.

The relevant evidence adduced in support of the State's
position that a trespass and asportation had been es-
tablished showed that the appellant, in the presence of
Mr. Blevis, had removed Mr. Blevis' .38 caliber pistol
from a drawer in the store and had taken actual posses-
sion of it. It was further shown that pursuant to a di-
rective from the appellant, Mr. Blevis had actually re-
moved the money from the cash register, the beer and
brandy from its usual location in the store, and had placed
these items in a cardboard box for removal from the store
by the appellant before the police arrested the appellant.

---

2. § 12.05 page 835 sets forth that the goods need not neces-
sarily be removed from the owner's premises to constitute an
asportation within the requirements of the crime of larceny.

We think these circumstances are legally sufficient under the holdings and rationale of *Osborne, supra, Wiggins, supra,* and the recited text to justify the trial court in finding that a sufficient trespass and asportation of the personal property of the victim had been committed by the appellant to constitute the crime of robbery even though the goods had not been removed from the premises. There is no question that the taking was accomplished by putting the owner in fear by use of a deadly weapon.

The appellant also contended that due to his intoxication at the time of the offenses, he should not have been convicted because he was mentally incapable of formulating the necessary criminal intent. Voluntary intoxication is not a defense to second-degree murder. See *Chisley v. State, supra.* However, we have held that in a prosecution for robbery, voluntary intoxication may be considered in determining whether the accused was capable of formulating the necessary criminal intent to permanently deprive the owner of the use of his property. *Parker v. State,* 7 Md. App. 167, 174. See also *Midgett v. State,* 216 Md. 26, 41. While the appellant testified that he was so intoxicated at the time of the robbery that he had no recollection of what occurred, there was also testimony from the officer who arrested him at the scene of the robbery that there was nothing about his appearance or conduct at that time to show that he had even been drinking. We hold therefore that the trial court was not clearly in error in finding beyond a reasonable doubt from the totality of the evidence that the appellant had sufficient mental capacity at the time of the robbery to formulate the necessary criminal intent to commit this crime.

We conclude therefore that the trial court was not clearly in error in further finding beyond a reasonable doubt that the appellant was guilty of robbery with a dangerous and deadly weapon.

The issue of sanity was not seriously contested. The report of Clifton T. Perkins Hospital showed that it

was the unanimous opinion of the staff of that institution that the appellant was legally responsible at the time of the commission of the crimes charged. There was no expert testimony to the contrary. We hold therefore that the trial court was not clearly in error in finding the appellant legally responsible at the time of the commission of the crimes charged. The appellant's plea that he was mentally incompetent to stand trial was withdrawn prior to trial.

*Judgments affirmed.*