## O'CONNOR *v.* STATE

[No. 305, September Term, 1963.]

*Decided April 28, 1964.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and MARBURY, JJ.

*Joseph G. Koutz* for the appellant.

*Mathias J. DeVito, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *William J. O'Donnell, State's Attorney for Baltimore City,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

In 1959 the appellant had been committed to Patuxent Institution as a defective delinquent, but in 1962 he had been placed on a "work out—live in" status. While on this schedule, and while employed at Cypro, Inc. in Baltimore City as a machinist's helper, he was apparently discharged. He returned next day and forcibly took money from two co-employees, an elderly man and a young woman, after he had threatened them with a screwdriver in the back and a letter opener in the throat. He left them bound and gagged and went to New Jersey, where he subsequently surrendered to the New Jersey police. On December 5, 1962, he was taken before a judge in New Jersey, where he refused an offer of counsel and waived extradition. He returned to Patuxent in an automobile with Captain Ingram of that institution and Lieutenant Carter.

The appellant was presented by the Grand Jury in Baltimore City on December 20, 1962, and indicted on January 10, 1963, on charges of robbery with a deadly weapon. On January 25, 1963, he was arraigned and pleaded not guilty, not guilty by reason of insanity at the time of the offense, and insane at the time of trial. He was represented by court-appointed counsel, and elected a jury trial. Both employees testified and the State also introduced an oral confession made by the accused and reduced to writing. The jury found him guilty, sane then and sane now. He was sentenced to fifteen years on each indictment, to run concurrently, and remanded to Patuxent.

On this appeal the appellant contends (1) that the trial court

erred in charging the jury that the burden was upon the appellant to prove insanity by a preponderance of the evidence, (2) that the court committed reversible error in admitting evidence of the oral confession by the accused, and (3) that there was reversible error in the proceedings prior to indictment, amounting to a denial of due process.

1. The State contends that the instruction was correct, but argues that even if it was not there was no reversible error because the defense produced no evidence of insanity sufficient to overcome the presumption of sanity. *Thomas v. State,* 206 Md. 575, *Lipscomb v. State,* 223 Md. 599. See also *Saldiveri v. State,* 217 Md. 412, *Dunn v. State,* 226 Md. 463, and *Hyde v. State,* 228 Md. 209. Hence the State contends there was legally insufficient evidence to warrant the submission of this issue to the jury. Upon a careful review of the evidence, we agree. Dr. Prado, the psychiatrist called by the State, testified that while the appellant had a personality disorder he had the capacity, both at the time of the offense and at the time of the trial, to distinguish right from wrong and to understand the nature and consequences of his acts as applied to himself. While he felt that the accused was a defective delinquent, this was because of his personality and not by reason of any mental illness. Dr. Boslow, the psychiatrist called by the appellant, testified that the appellant knew the difference between right and wrong and had the capacity to understand the nature and consequences of his acts. He testified that the appellant was, and always had been a responsible agent and had never been insane, not even under the *Durham* test [*Durham v. United States,* 214 F. 2d 862, (C.A. D.C.)] for criminal responsibility. He further testified that the accused was emotionally unstable but not psychotic. Thus the experts were in complete agreement, and there was no other evidence on the point.

2. It is perfectly clear that no force or threats were used against the accused when he made the oral confession. This occurred on the ride back to Maryland from New Jersey. The appellant was not even questioned in the matter. He volunteered the information as to how he had happened to take the money, and why he had gone to New Jersey. He admitted he

462

had been glad to see the Maryland officers, and complained of the treatment he had received from the New Jersey police. He questioned the Maryland officers as to what charges had been placed against him, and seemed relieved when told that, so far as they knew, the charges were escape and robbery. He admitted that what he told the officers was voluntary. Any connection between the alleged mistreatment by the New Jersey police and his statements to the Maryland police was effectively broken, as the trial court found.

3. The appellant's last contention is based on the claim that he should have been taken before a magistrate upon his return to Maryland, and upon the undue delay between his arrest and indictment. Actually, he was returned to Patuxent, to which he had been previously committed. He would not have been entitled to bail. The fact that he was not taken into court until after his indictment seems immaterial, under the circumstances. A preliminary hearing is not essential, or a necessary preliminary to a valid indictment. *Shorey v. State,* 227 Md. 385; *Hardesty v. State,* 223 Md. 559. There is no time limit, other than that fixed by the Statute of Limitations, upon action by the Grand Jury. In any event, it seems clear that a delay of some thirty-five days was not unreasonable under the circumstances.

*Judgment affirmed.*