JEFFREY AARON BURKO *v.* STATE OF MARYLAND

[No. 278 (On Remand), September Term, 1973.]

*Decided November 26, 1975.*

The cause was argued before MOYLAN, GILBERT and MELVIN, JJ.

*Karl G. Feissner, Assigned Public Defender,* with whom were *Feissner, Garrity, Levan & Schimel* on the brief, for appellant.

*Arrie W. Davis, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Andrew L. Sonner, State's Attorney for Montgomery County,* and *William T. Wood, Assistant State's Attorney for Montgomery County,* on the brief, for appellee.

*Note: Certiorari* denied, Court of Appeals of Maryland, July 15, 1976.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Jeffrey Aaron Burko, was convicted by a Frederick County jury, presided over by Judge Samuel W. Barrick, of second-degree murder and of armed robbery. The trial had been removed to Frederick County from Montgomery County. In *Burko v. State*, 19 Md. App. 645, 313 A. 2d 864, we affirmed the convictions. A Petition for Writ of Certiorari was denied by the Court of Appeals. A Petition for Writ of Certiorari to the Supreme Court was granted, 45 L.Ed.2d 667 (1975), the judgment was vacated and the case was remanded to the Court of Appeals "for further consideration in light of *Mullaney v. Wilbur*, 421 U. S. 684, 95 S. Ct. 1881, 44 L.Ed.2d 508 (1975)." The Court of Appeals, in turn, remanded the case to this Court for reconsideration in the light of *Mullaney v. Wilbur*. Supplemental briefs have been submitted by both parties and the case has been reargued with exclusive focus upon the applicability of *Mullaney v. Wilbur*. After searching reconsideration, we still affirm.

In *Burko v. State*, at 19 Md. App. 648-650, Judge Gilbert well summarized "the bizarre facts of this case":

"Hahn's shoe store was held up on the afternoon of March 9, 1972 by a lone gunman who, after taking a sum of money in excess of five hundred dollars ($500.00) from the cash register, compelled the employees of the store to get down on the floor. The gunman then fled. Immediately contiguous to Hahn's is an alley, and the felon ran into that alley and disappeared. Within seconds a 1964 blue Rambler exited the alley. It was stopped by the police a short distance from the scene of the crime. The appellant was the driver of the Rambler. He was ordered from the car and frisked. The vehicle was searched for a weapon and the proceeds of the robbery, but neither was found. The glove compartment of the automobile was locked as was the trunk. The appellant denied ownership of the car and said that it belonged to a 'Mr. Turner'.

Appellant was given the warnings required by *Miranda v. Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). In response to the police question as to what the appellant was doing in the rear of Hahn's shoe store, he stated that he was on his way to J.C. Penney's to seek employment. He said that he went to the parking lot in the rear of the Penney store. When he started to go, into the rear door of the store, he observed a sign which indicated that that entrance was for employees only. Appellant further stated that realizing the time of day and that he was required to meet his friend, Turner, some distance away, he got back into the car and was on his way to meet Turner when he was stopped by the police. The officers asked appellant for the registration card of the vehicle. The appellant responded that the registration card was locked in the glove compartment, and he did not have a key. The police, dissatisfied with appellant's explanation of events, and fully cognizant that the permissive use of the vehicle by appellant had not been established, instructed the appellant to drive the car to the police station parking lot which was about one mile from the scene of the hold up. Upon arrival at the station house appellant was again given his *Miranda* warnings, and he waived the right to counsel. Appellant did, however, seek, and obtain permission to use the telephone to call Turner. In fact the call was placed for him through the police switchboard. There was no answer to appellant's call to Turner for reasons hereinafter vividly clear.

One of the appellant's interrogators went to the Rambler and again conducted a search of the car. The glove compartment and trunk were not searched. Thereafter, the vehicle was removed from the parking lot to the garage of the police building. Subsequently, Lieutenant Robertson, who was apparently puzzled by the failure of the police to find any evidence of the robbery in the car, inquired

if anyone had checked the trunk. When the reply to that question was in the negative, the lieutenant and Officer Franklin Snider went to the car where a fourth search was commenced. The lieutenant and Snider entered the back seat of the vehicle and began to remove it when the lieutenant was suddenly shot in the head. A second shot narrowly missed Officer Snider. The gunman, whose body was subsequently extricated from the trunk, was Steven Van Turner. The appellant was still in the interrogation room. A police officer burst into the room and advised another officer that Lieutenant Robertson had just been shot and killed by a person who had been in the trunk of the Rambler. Upon overhearing this expletive, the appellant exclaimed, 'Christ, if I knew he was going to shoot anybody I would have opened the trunk myself. I didn't know he would shoot anyone; I didn't want that Officer killed. I want to die. I wish I had been the one who was shot.' "

Motivated perhaps by the fact that the appellant was a principal only in the second degree who was not present during and may not have anticipated the actual killing of Lt. Robertson, the jury, as is always its prerogative, returned a legally illogical verdict of guilty of murder in the second degree, although the undisputed evidence clearly established, if it established any crime at all, a case of first-degree murder based upon the combination of the felony-murder doctrine and Article 27, § 410. The jury did, in its companion verdict, find the appellant guilty of armed robbery.

In affirming the establishment of the criminal agency of the appellant in our initial consideration of this case, we quoted extensively from *Jeter v. State,* 9 Md. App. 575, 267 A. 2d 319, *aff'd* 261 Md. 221, 274 A. 2d 337, a case in which the defendant, apprehended during the perpetration of a storehouse breaking, was already in police custody at the moment his yet unapprehended accomplice shot and killed a guard. We there held that the principal in the second degree

was fully responsible for the actions of his accomplice while the underlying felony and the chain of circumstances it set in motion were still in progress. In applying the principle of *Jeter* to this case, we said, at 19 Md. App. 656-657:

"The testimony revealed that the appellant and Turner had been sharing a hotel room at the Parkside Hotel in the District of Columbia for a period of two or three weeks prior to the robbery. They were seen together by the hotel clerk on the day of the robbery. Appellant had been previously employed in a Hahn's shoe store in Alexandria, Virginia. Turner committed the armed robbery of Hahn's shoe store in Silver Spring, Maryland. When he fled from the store with gun in hand, he ran up an alley and disappeared from sight. Almost immediately thereafter a motor vehicle owned by Turner and driven by the appellant, exited that alley. Appellant, through subterfuge, misled the police into believing that he was on his way to meet Turner who was supposedly waiting some distance from the scene of the hold up. Moreover, appellant professed to attempt to place a telephone call from the police station to Turner. Turner, subsequently, from the trunk of the car, shot to death Lieutenant Robertson, and Turner was in turn shot to death while in the trunk of the car. Appellant, hearing of the shooting, exclaimed that had he known that Turner was going to kill somebody, he, appellant, would have opened the trunk himself.

We think that the facts of this case give rise to a clear inference that the appellant was a participant in the robbery of the store, knew Turner was armed and knew that revolvers, when used by robbers, are not just for the purpose of intimidating the victim into yielding their valuables, but are also utilized for the purpose of making good an escape even to the point of killing, if necessary. The appellant's conduct following his detention by the police was all in furtherance of a plan to avoid, not only for

himself, charges for the offense of robbery, but also to cover-up for Turner, whom he knew to be hidden in the trunk of the motor vehicle. The jury was entitled to find from the evidence presented to it that appellant was under the hope and expectation that Turner's presence would not be detected, that the proceeds of the robbery and the weapon, consequently would not be found, and that both he and Turner would then eschew responsibility for their criminal act."

The escape from and concealment of the armed robbery were still in progress (even in the unlikely forum of the police station) and the resulting murder was a natural and not-unforeseeable consequence thereof. Upon this reconsideration, it is not the criminal agency of the appellant which is in issue. The actions of the triggerman and accomplice, Turner, were attributable to the appellant.

With this background, we turn to the particular *mens rea* of the appellant and to the jury instructions bearing thereupon. We now examine those instructions in the light of *Mullaney v. Wilbur.* The instruction now under scrutiny was:

"Under the Maryland law all homicides are presumed to be murder in the second degree. This is the presumption under Maryland law, and it is the burden of the State to prove beyond a reasonable doubt that the homicide was, in fact, murder in the first degree. In other words, the presumption is in a homicide that it is murder in the second degree, and the State must prove, or has the burden of proving that the murder was actually murder in the first degree. . . *Now by the same token, if you should find that there was an unlawful homicide, then the burden rests upon the Defendant not to satisfy you beyond a reasonable doubt but to a fair preponderance of the evidence that the killing happened under certain circumstances to reduce the homicide to manslaughter.* In other words, the

presumption, if you do find there is murder, it is murder in the second degree, . . .and *the burden rests on the Defendant to show you that the homicide should be reduced to manslaughter, . . .*" (Emphasis supplied)

As we analyzed at some length in Part IIG of *Evans v. State*, 28 Md. App. 640, 349 A. 2d 300, that instruction is now flatly unconstitutional in the light of *Mullaney v. Wilbur*. Notwithstanding that error, it was an error in a vacuum — a purely academic error — as far as this particular case is concerned. As we further analyzed in *Evans* (Part IF and Part IIH), *Mullaney v. Wilbur* will not be applied where "there was an erroneous allocation of the burden of persuasion on the questions of mitigation, justification or excuse but where they were not issues in the case." We there concluded that "instructions need not and should not be given on particular defenses unless and until . . . a legitimate jury issue with respect to a particular defense" has been generated, either by the defense itself or by the evidence produced by the State. We further concluded, in Part IF of that opinion:

"When a defendant has then no right even to take an issue before the jury, any instruction on such an issue (erroneous or not) is more than he is entitled to. When any consideration of an issue by the fact finder (court or jury) would properly be totally foreclosed, the defendant cannot complain that the issue was submitted under an unduly heavy burden upon him, since he has, even in that event, received more than he deserved. To carry an undue burden of persuasion may be a critical handicap to one legitimately in a race; it is no handicap at all when one is not entitled to run in the race."

After citing Maryland precedents in this regard in *Street v. State*, 26 Md. App. 336, 340-341, 338 A. 2d 72 (where an erroneous allocation of the burden of persuasion on the question of self-defense was held to be immaterial where no fair jury question had been generated as to self-defense),

and *O'Connor v. State,* 234 Md. 459, 461, 199 A. 2d 807 (where an erroneous allocation of the burden of persuasion on the question of insanity was held to be immaterial where no fair jury question had been generated as to insanity), we concluded, "Erroneous instructions on non-issues are self-evidently immaterial."

In this case, the appellant offered no defense whatsoever. Nothing in his statement to the police and nothing else in the State's case remotely suggested, let alone generated a legitimate jury issue with respect to, any conceivable theory of mitigation cognizable at law. There was no arguable hot-blooded response to legally adequate provocation. Under the circumstances, the appellant was not entitled to any instruction on the subject of the provocation which might in other situations reduce murder to manslaughter. There was no evidence to support such an instruction and, under the circumstances, the academically incorrect instruction was palpably immaterial in this case.

The armed robbery conviction has traveled up to the Court of Appeals, up to the Supreme Court, back to the Court of Appeals, and back to us in tow with the murder conviction. *Mullaney v. Wilbur* had no conceivable bearing upon it. After all of its travels, the robbery conviction stands affirmed just as it did in *Burko v. State,* 19 Md. App. 645, 313 A. 2d 864 (1974).

*Judgments affirmed.*