# MICHAEL SEAN GARLAND *v.* STATE OF MARYLAND

[No. 876, September Term, 1974.]

*Decided November 26, 1975.*

The cause was argued before MOYLAN, MOORE and MASON, JJ., and reargued before ORTH, C. J., and MOYLAN and GILBERT, JJ.

Argued and reargued by *William H. Murphy, Jr.,* for appellant.

28

Argued and reargued by *Alexander L. Cummings,
Assistant Attorney General,* with whom were *Francis B.
Burch, Attorney General, Milton B. Allen, State's Attorney
for Baltimore City,* and *Joseph F. Lyons, Assistant State's
Attorney for Baltimore City,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Michael Sean Garland, was convicted in the
Circuit Court for Montgomery County by a jury of both
murder in the second degree and the unlawful use of a
handgun. The case had been removed from Baltimore City.
The appeal before us was originally argued on April 10, 1975.
Following the decision of the Supreme Court in the case of
*Mullaney v. Wilbur,* 421 U. S. 684, 95 S. Ct. 1881, 44 L.Ed.2d
508, on June 9, 1975, the appellant petitioned for reargument
because of the bearing which that decision might have on the
present appeal. We granted the petition and reargument
was had on September 17, 1975.

The critical defensive issue in this case was mitigation in
that the appellant allegedly killed his victim in a hot-blooded
response to legally adequate provocation, to wit, in the
course of mutual combat. Without detailing the long and
involved factual picture, it is enough to point out that the
evidence, both from the State's case and the defense case,
was enough to generate a genuine jury issue on the subject
of mitigation due to provocation. In making that
determination, of course, we look at the evidence in the light
most favorable to the defense. As we analyzed in *Evans v.
State,* 28 Md. App. 640, 349 A. 2d 300 (1975), in Part IIH of
that opinion, once a defensive issue, such as mitigation, has
been generated by the evidence, the clear burden falls upon
the State to prove the absence of such mitigation beyond a
reasonable doubt, just as it would have to prove any other
element of a crime. When jury instructions purport to define
the crime of murder and mitigation is fairly an issue in the
case, the absence of such mitigation must be included as a
necessary element which the State must prove beyond a
reasonable doubt.

The general portions of the instruction, setting out the State's burden, were exemplary:

> "This being a criminal case, the burden is on the State to prove the guilt of the Defendant beyond any reasonable doubt.
>
> . . .
>
> In every criminal case, the defendant is presumed innocent at the commencement of the trial; and the law requires that the burden is on the State, as I have indicated to you, to prove guilt beyond any reasonable doubt.
>
> . . .
>
> There is no burden whatsoever on the Defendant, because the burden never shifts to the defendant in a criminal case."

The court then moved on to a consideration of the first count of the indictment, which charged in the language of first-degree murder but which also subsumed both second-degree murder and manslaughter. The meaning of three critical paragraphs is dangerously ambiguous, since the same subject is referred to in shifting terms:

> "As I have indicated, you have for determination two counts, *the first count charging murder;* and I will give your foreman a written statement of *the possible verdicts* in this case.
>
> In dealing with murder, the presumption is that it is murder in the second degree, and even though you find that it is murder, the State still has the burden of proof that would raise it from second degree to first degree murder.
>
> I am going to review *the various types of homicide* for you to consider." (Emphasis supplied)

The middle paragraph is critical under *Mullaney v. Wilbur,* but it cannot be divorced from the context of the paragraphs which immediately precede it and follow it. In a

literal and sophisticated sense, the statement, "In dealing with *murder*, the presumption is that it is murder in the second degree," is constitutionally unoffending. See Part IID of *Evans v. State*. If it were clear from its context that the statement was not a careless or ill-phrased way of saying that, "All homicide is presumed to be second-degree murder," or, "All felonious homicide is presumed to be second-degree murder," (both of which would offend *Mullaney v. Wilbur*) but was rather a clearly communicated and precisely literal statement to the effect that even proven murder is assumed to be only in the second degree until the State raises it to first degree, no harm would be done under *Mullaney v. Wilbur*, or *In re Winship*, 397 U. S. 358, 90 S. Ct. 1068, 25 L.Ed.2d 368 (1970). In this context it is not clear that this was the message intended to be communicated or that this was the message received; indeed, the indications are quite otherwise. The immediately preceding sentence refers to "the first count" as the count "charging *murder*," even though the count comprehends all three degrees of felonious homicide. The same sentence pointed out that the jury would be given a statement of "the possible verdicts" under that count, which list of verdicts included manslaughter. The sentence immediately following up on the statement as to the presumption of second-degree murder indicated that the court would then "review the various types of *homicide* for you to consider." That review included manslaughter. We will not strain to hold the isolated sentence hypertechnically correct when a fair reading in full context makes it apparent that the actual message communicated did offend *Mullaney v. Wilbur*.

Our holding with respect to the jury instructions does not rest upon this reading alone, however. After correctly defining murder in the first degree, the court went on to define second-degree murder and then to define malice:

> "Second degree murder is an unlawful killing with malice, but without the deliberation or premeditation.
>
> Malice is something done intentionally and without a lawful excuse."

Malice comprehends three aspects — 1) the intentional act, 2) the absence of justification or excuse and 3) the absence of mitigation. The first two aspects separate murder from non-culpable homicide. It is the third aspect, and the third aspect alone, which separates murder from manslaughter. In the act of defining malice, the failure to include the element of the "absence of mitigation" in a case where mitigation was a genuine issue operated to relieve the State of its rightful burden of proving this critical element beyond a reasonable doubt. The discussion of manslaughter and of provocation which followed was again exemplary:

> "The third type of homicide, and the lesser of the three types of homicide, is manslaughter.
>
> This is an unlawful killing without malice, and is generally defined as an involuntary killing not done with a specific intent to take lives, but where the killing was, nevertheless, done with a reckless and negligent indifference to another's life.
>
> In connection with manslaughter, there may be a homicide which would otherwise be murder, which is reduced to manslaughter by circumstances in mitigation or alleviation, as we call it; and this is where it is established that this killing was provoked.
>
> In order to have a provocation in a homicide case to reduce it to manslaughter, there must have been adequate provocation, and the killing must have been done in the heat of passion. It must have been a sudden heat of passion; that is, the killing must have followed the provocation before there had been a reasonable opportunity to cool off.
>
> There must have been a causal connection between the provocation, the passion, and the fatal shooting.
>
> The Defendant claims in this case, among other things, provocation.
>
> There was testimony concerning the incident from witnesses for you to consider in connection

with the confrontation and what happened thereafter.

If you find that there was a combat, and the combat is mutual; that is, if the intent to fight was mutual, both intended to fight and were ready to do so, you may find that it was a mutual combat, although one party did not strike the first blow or one party did not strike any blow.

No provocation, however grievous, will reduce a voluntary homicide to manslaughter if the circumstances show that the person doing the killing acted not in the heat of blood, but from malice."

Notwithstanding two references to malice in this manslaughter discussion, which might lead a trained lawyer to deduce that malice includes the absence of mitigation, the instruction itself does not fairly convey the necessary message that the burden of negating mitigation is upon the State and that if the jury is left in a state of equipoise in that regard, or even is persuaded in that regard but not beyond a reasonable doubt, the verdict must be only as to manslaughter and not as to murder.

We hold that this instruction did not pass constitutional muster under *Mullaney v. Wilbur* and *Winship*. Since the verdict was for murder in the second degree, *Mullaney v. Wilbur* mandates a reversal. *Evans v. State*, Part ID.

It follows that with the reversal of the conviction for the underlying felony, the conviction for the handgun violation, predicated of necessity upon it, must also be reversed.

Upon a thorough review of the Memorandum Opinion and Order Granting State's Suggestion for Removal, we are persuaded that there was no abuse of discretion in removing the case from Baltimore City to Montgomery County for trial. We would point out, for the guidance of the court on remand, the inadvisability of informing the jury of the possible sentences where the sentences are of no concern to the jury, as is always true except where the jury has the

power to qualify the sentence. It is unnecessary to treat any of the other contentions raised by the appellant.

> *Judgments reversed; case remanded to Circuit Court for Montgomery County for retrial.*