## STATE OF MARYLAND *v.* GARLAND

[No. 172, September Term, 1975.]

*Decided July 15, 1976.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ▌O'DONNELL, JJ.

*Clarence W. Sharp* and *Michael James Kelly, Assistant Attorneys General,* with whom were *Francis B. Burch, Attorney General,* and *Deborah K. Handel, Assistant Attorney General,* on the brief, for appellant.

*Alan H. Murrell, Public Defender, George E. Burns, Jr., Assistant Public Defender,* and *William H. Murphy, Jr.,* for appellee.

MURPHY, C. J., delivered the opinion of the Court.

In *Mullaney v. Wilbur,* 421 U. S. 684, 95 S. Ct. 1881, 44 L.Ed.2d 508, decided June 9, 1975, the Supreme Court held that a Maine jury instruction which required a defendant charged with murder to prove, by a preponderance of the evidence, that he acted "in the heat of passion on sudden provocation" in order to reduce the homicide to manslaughter violated the rule of *In re Winship,* ·397 U. S. 358, 364, 90 S. Ct. 1068, 25 L.Ed.2d 368 (1970), that the due process clause of the fourteenth amendment requires the prosecution to prove beyond a reasonable doubt "every fact necessary to constitute the crime with which a defendant is charged." In view of these decisions, in *State of Maryland v. Edward Evans,* 278 Md. 197, 362 A. 2d 629 (1976), we

affirmed a judgment of the Court of Special Appeals (28 Md. App. 640, 349 A. 2d 300 (1975)) that a jury instruction in a homicide case, to the effect that malice might be presumed, unconstitutionally relieved the State of its burden of proving the element of non-mitigation beyond a reasonable doubt where that issue had been properly generated by the evidence; and that a further instruction placing an affirmative burden on the defendant to prove mitigation by a preponderance of the evidence in order to reduce murder to manslaughter was similarly deficient under *Mullaney* and *Winship.* We said that due process of law was violated under these decisions by placing the burden on the defendant to prove, by any standard, the existence of mitigating circumstances necessary to lower the felonious homicide to the level of manslaughter.

In *Garland v. State,* 29 Md. App. 27, 349 A. 2d 374, decided November 26, 1975, the Court of Special Appeals held that the instructions given to the jury in that homicide case violated the principles of *Winship* and *Mullaney.* Garland had been charged with murder and was convicted in 1974 by a jury of murder in the second degree.[1] His defense at trial had been that the homicide was mitigated because he killed his victim in a hot-blooded response to legally adequate provocation, *i.e.,* in the course of mutual combat. There was evidence before the jury sufficient to generate a genuine issue of mitigation due to provocation. The trial court instructed the jury as follows:

"This being a criminal case, the burden is on the State to prove the guilt of the Defendant beyond any reasonable doubt.

\* \* \*

"In every criminal case, the defendant is presumed innocent at the commencement of the trial; and the law requires that the burden is on the

---

[1]. He was also charged with the unlawful use of a handgun and convicted of that offense.

State . . . to prove guilt beyond any reasonable doubt.

* * *

"There is no burden whatsoever on the Defendant, because the burden never shifts to the defendant in a criminal case.

"Likewise, there is no burden on the Defendant to testify, or to call any witnesses, or to produce any evidence.

* * *

"As I have indicated, you have for determination two counts, the first count charging murder; and I will give your foreman a written statement of the possible verdicts in this case.

"In dealing with murder, the presumption is that it is murder in the second degree, and even though you find that it is murder, the State still has the burden of proof that would raise it from second degree to first degree murder."

After the trial court had properly defined murder in the first degree, it instructed the jury with respect to murder in the second degree and manslaughter. It said:

"Second degree murder is an unlawful killing with malice, but without the deliberation or premeditation.

"Malice is something done intentionally and without a lawful excuse.

"The third type of homicide, and the lesser of the three types of homicide, is manslaughter.

"This is an unlawful killing without malice, and is generally defined as an involuntary killing not done with a specific intent to take lives, but where the killing was, nevertheless, done with a reckless and negligent indifference to another's life.

"In connection with manslaughter, there may be a homicide which would otherwise be murder, which is reduced to manslaughter by circumstances in mitigation or alleviation, as we call it; and this is where it is established that this killing was provoked.

"In order to have a provocation in a homicide case to reduce it to manslaughter, there must have been adequate provocation, and the killing must have been done in the heat of passion. It must have been a sudden heat of passion; that is, the killing must have followed the provocation before there had been a reasonable opportunity to cool off.

"There must have been a causal connection between the provocation, the passion, and the fatal shooting.

"The Defendant claims in this case, among other things, provocation.

"There was testimony concerning the incident from witnesses for you to consider in connection with the confrontation and what happened thereafter.

"If you find that there was a combat, and the combat is mutual; that is, if the intent to fight was mutual, both intended to fight and were ready to do so, you may find that it was a mutual combat, although one party did not strike the first blow or one party did not strike any blow.

"No provocation, however grievous, will reduce a voluntary homicide to manslaughter if the circumstances show that the person doing the killing acted not in the heat of blood, but from malice."

Writing for the Court of Special Appeals in *Garland,* Judge Charles E. Moylan, Jr. noted that once the defensive issue of mitigation had been generated by the evidence, the burden was upon the State "to prove the absence of such mitigation beyond a reasonable doubt, just as it would have

to prove any other element of a crime." 29 Md. App. at 28. The court said that when the trial judge undertook to define the crime of murder in his jury instructions and mitigation was fairly an issue in the case, the absence of such mitigation must be included as a necessary element which the State was required to prove beyond a reasonable doubt. Concluding that the instructions given to the jury were constitutionally defective under *Mullaney*, the court said:

". . . In a literal and sophisticated sense, the statement, 'In dealing with *murder*, the presumption is that it is murder in the second degree,' is constitutionally unoffending. . . . If it were clear from its context that the statement was not a careless or ill-phrased way of saying that, 'All homicide is presumed to be second-degree murder,' or, 'All felonious homicide is presumed to be second-degree murder,' (both of which would offend *Mullaney v. Wilbur*) but was rather a clearly communicated and precisely literal statement to the effect that even proven murder is assumed to be only in the second degree until the State raises it to first degree, no harm would be done under *Mullaney v. Wilbur*, or *In re Winship* . . . . In this context it is not clear that this was the message intended to be communicated or that this was the message received; indeed, the indications are quite otherwise. The immediately preceding sentence refers to 'the first count' as the count 'charging *murder*,' even though the count comprehends all three degrees of felonious homicide. The same sentence pointed out that the jury would be given a statement of 'the possible verdicts' under that count, which list of verdicts included manslaughter. The sentence immediately following up on the statement as to the presumption of second-degree murder indicated that the court would then 'review the various types of *homicide* for you to consider.' That review included manslaughter. We will not strain to hold the isolated sentence hypertechni-

cally correct when a fair reading in full context makes it apparent that the actual message communicated did offend *Mullaney v. Wilbur.*" 29 Md. App. at 29-30. (Emphasis in original.)

The court in *Garland* next noted that the trial judge defined second degree murder as "an unlawful killing with malice, but without the deliberation or premeditation" and that it defined "malice" as "something done intentionally and without a lawful excuse." The Court of Special Appeals held that malice comprehends three aspects, *i.e.,* (1) the intentional act, (2) the absence of justification or excuse, and (3) the absence of mitigation. It said that the first two aspects separate murder from non-culpable homicide and that the third aspect separates murder from manslaughter. It said that in defining "malice," the failure of the trial judge to include the element of the absence of mitigation in a case where mitigation was a genuine issue "operated to relieve the State of its rightful burden of proving this critical element beyond a reasonable doubt." 29 Md. App. at 31. In reversing the convictions, the court concluded:

> "Notwithstanding two references to malice in . . . [the trial court's] manslaughter discussion, which might lead a trained lawyer to deduce that malice includes the absence of mitigation, the instruction itself does not fairly convey the necessary message that the burden of negating mitigation is upon the State and that if the jury is left in a state of equipoise in that regard, or even is persuaded in that regard but not beyond a reasonable doubt, the verdict must be only as to manslaughter and not as to murder.
>
> "We hold that this instruction did not pass constitutional muster under *Mullaney v. Wilbur* and *Winship.* . . ." 29 Md. App. at 32.

We think the Court of Special Appeals erred in reversing Garland's convictions. While it may have been correct in concluding that the instruction, "In dealing with *murder,* the presumption is that it is murder in the second degree," was

"a careless or ill-phrased way of saying that, 'All homicide is presumed to be second-degree murder,' " 29 Md. App. at 30 (which would have offended Mullaney), the impact of a given instruction upon a juror has no relationship to judicial carelessness or to what the judge might have actually intended to convey. It may have been that the trial judge intended to say "In dealing with homicide . . ." instead of "In dealing with murder . . ." but his supposed carelessness, whether viewed in isolation or in context, could only have benefited Garland. If the jury found that murder had been proved by the State, then, as the trial judge instructed it in the same sentence, "the State still has the burden of proof that would raise it from second degree to first degree murder." Instructing that murder is presumed to be of the second degree was not an incorrect statement of law, and we therefore find no reversible error in this portion of the instructions.

While we agree with the court in *Garland* that the element of malice includes the absence of mitigation, we do not think that the trial court's instruction that "[m]alice is something done intentionally and without a lawful excuse," properly viewed in the context of the overall charge, constituted reversible error. Without question, under *Mullaney*, when the issue of mitigation is properly presented by the evidence, it is the State's burden to prove its absence beyond a reasonable doubt. *State v. Evans, supra.* In defining "malice" in his jury instructions, it would have been preferable had the trial judge stated that the absence of mitigation was a necessary element of the offense. But considering the instructions in their entirety, as we must do, *State v. Grady*, 276 Md. 178, 345 A. 2d 436 (1975), we do not think that they unconstitutionally relieved the State of its rightful burden of proving this critical element beyond a reasonable doubt. The jury was twice advised in the court's instructions that the burden was on the State to prove the defendant guilty beyond a reasonable doubt. It was told that the burden never shifts to the defendant; that he had no burden "whatsoever" and was presumed innocent. The jury was told that the element of malice separates murder from

manslaughter; that second degree murder was an unlawful killing with malice, but without the deliberation or premeditation. It was instructed that if it found the existence of provocation, the crime would be manslaughter, not murder. It was told that manslaughter was an unlawful killing without malice; that where circumstances in mitigation or alleviation were found to exist, *i.e.*, where the killing was provoked, the case was one of manslaughter. This was not a case, therefore, like *Mullaney* or *State v. Evans, supra,* involving jury instructions placing the burden upon the defendant to prove by a preponderance of the evidence (or by any other standard) the existence of mitigating circumstances due to provocation in order to reduce the crime from murder to manslaughter.

It is, of course, clear that in viewing instructions as a whole, attention should not be focused on a particular portion lifted out of context, but rather their adequacy must be determined by viewing them as an entirety. *State v. Foster,* 263 Md. 388, 283 A. 2d 411 (1971). As the concurring opinion in *Mullaney* noted, instructions to the jury are not to be judged in artificial isolation but must be viewed in the context of the overall charge. 421 U. S. at 684. We think these principles are applicable in the circumstances of this case and we find no violation of *Mullaney* or *Winship. See State v. Evans, supra.*

> *Judgment of the Court of Special Appeals reversed; case remanded to that Court for further proceedings to consider the contentions raised but not decided in that case; costs to be paid by respondent.*