## MELVIN JONES v. STATE OF MARYLAND

[No. 26, September Term, 1977.]

*Decided October 14, 1977.*

The cause was argued before MORTON, THOMPSON and POWERS, JJ.*

*Geraldine K. Sweeney, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Mark Colvin, Assistant Public Defender,* on the brief, for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A.*

---

* Note: *Certiorari* denied, Court of Appeals of Maryland, December 21, 1977.

*Swisher, State's Attorney for Baltimore City,* and *Leonard Eiswert, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

In a court trial in the Criminal Court of Baltimore before Judge J. Harold Grady, the appellant was found guilty of second degree murder. The court had granted a judgment of acquittal as to first degree murder. Other counts in the indictment were held to have merged into the second degree murder conviction. The court imposed a sentence of 30 years.

On direct appeal this Court affirmed the judgment of conviction in an unreported opinion, *Jones v. State,* No. 598, September Term, 1974, filed 27 March 1975. The Court of Appeals denied a petition for a writ of certiorari.

The present phase of the case arose when the appellant, in proper person, prepared and filed, on 21 July 1976, a petition for post conviction relief, encouraged, no doubt, by what was said in *Evans v. State,* 28 Md. App. 640, 349 A. 2d 300 (1975), aff'd. *State v. Evans,* 278 Md. 197, 362 A. 2d 629 (1976), applying the holding of the Supreme Court in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S. Ct. 1881, 44 L.Ed.2d 508 (1975).

In his petition the appellant asserted that the trial court committed error in its instructions by stating that

    a. All homicides are presumed to be with malice, and
    b. To lower the degree of homicide to manslaughter or lesser degree the burden is on the defendant to prove that the homicide was without malice.

Appellant also questioned whether the prosecution met its burden of proving malice aforethought beyond a reasonable doubt.

The petition was somewhat inaccurate, in that it spoke of error in the instructions given by the judge in the criminal trial. There were, of course, no instructions as such given in the criminal trial, which was held before the court without a jury. Judge Grady did, however, explain his finding of guilty

of murder in the second degree, and it is his reliance upon a presumption of malice that appellant contends was error.

At the hearing on the petition, held before Judge Meyer M. Cardin in the Criminal Court of Baltimore, counsel for Jones withdrew the third contention, and submitted on the record with regard to the question of malice. Judge Cardin denied post conviction relief. Jones filed an application to this Court for leave to appeal from that denial. We granted leave, and transferred the case to our regular appeal docket, so that the case could be fully briefed and argued.

In his brief here, appellant puts the issues somewhat differently. He asks:

"I. Did the evidence support a finding of manslaughter?

A. Did the evidence fairly generate an issue of mitigation?

B. Could the trial judge properly have found that Appellant did not act with malice and was guilty, therefore, of manslaughter?

"II. Can voluntary intoxication negate malice and, therefore, reduce murder to manslaughter?"

In Judge Cardin's opinion denying post conviction relief, he quoted the pertinent comments made by Judge Grady at the criminal trial. Judge Grady said:

"The Court is of the opinion that it has been established beyond a reasonable doubt that the victim, Edith Dorsey, died at the hands of the Defendant, Melvin Jones. The autopsy report shows that the death was caused by six separate incisive wounds of the body about the chest, neck and arms. The use of a deadly weapon directed at that part of the body certainly under our law supplies the element of malice necessary to constitute the elements of murder in the second degree. The Defendant's explanation of consuming a large amount of alcohol and not having any recollection of the events from a time, approximately 10:00 or

> 11:00 P.M. until ten or eleven hours later in my mind does not negative the legal presumption that the use of a deadly weapon under the circumstances constitutes malice."

It will be seen that Judge Grady placed no burden of proof, no burden of persuasion of any kind upon the accused. It is true that he said that the evidence "supplies the element of malice necessary to constitute the elements of murder in the second degree", and later referred to "the legal presumption that the use of a deadly weapon under the circumstances constitutes malice". It must be said that Judge Grady relied upon a presumption of malice, but he did not say whether he referred to that limited aspect of malice involving the intent to kill (or the intent to do grievous bodily harm) or whether he referred to that broader aspect of malice which may be said to exist only in the absence of justification or excuse, and the absence of mitigation.

As a practical matter, we have no doubt that Judge Grady applied the presumption of malice in its broad and unrestricted sense, as had been the universal practice in the courts of Maryland for generations. Whether doing so was a mere intellectual error, harmless in the context of the issues involved, or was substantial in the circumstances, and therefore was prejudicial to the appellant, must depend upon the evidence before the court, and the issues raised by that evidence.

In his opinion denying post conviction relief, Judge Cardin very aptly said:

> "It is manifest that the trial judge relied upon presumptions of law which were subsequently changed. By relying upon the presumption of malice through the use of a deadly weapon directed at a vital part of the human body, the State was unconstitutionally relieved of proving the absence of justification, excuse or mitigation and thereby thrusted the burden upon the petitioner to exculpate himself generally or of lowering his guilt to manslaughter.

"However, there were no issues generated by the evidence as to justification or excuse. The only issue presented at trial was one of mitigation in terms of voluntary intoxication and this, as was previously discussed, would not reduce second degree murder to manslaughter. Notwithstanding the error of the unconstitutional shifting of the burden of proof, where there are no issues generated by way of justification, or excuse or where mitigation through voluntary intoxication has been eliminated by a guilty finding of second degree murder, the petitioner has suffered no cognizable harm and therefore any error is manifestly harmless, at the constitutional level, and non-prejudicial, at the non-constitutional level."

In the opinion of this Court affirming the conviction on direct appeal, we summarized the facts in evidence. We said:

"According to the evidence adduced at trial, around 6:00 A.M., on January 27, 1974, Mary Ballard was awakened by the calling of her sister, Edith Dorsey, (the victim). She observed her sister sitting on the side of the bed in a stooped over position. The appellant was standing at the foot of the bed holding a knife which was dripping with blood. Mary Ballard ran from the house to her daughter's house after hearing the appellant say to her sister, 'Get up bitch, get up bitch, or I will kill you.'

"When Mildred Johnson, the daughter of Mary Ballard, arrived at her mother's house no one was there but her aunt, who was lying face down on the floor in a pool of blood. She left the house, flagged down a police car, and after riding a short distance with the officer, she saw the appellant. Officer Rivers, acting on information received from Mildred Johnson, parked his vehicle and approached the appellant, who said, 'Yeah, I cut

her.' The appellant was then arrested and searched; a knife was found in his pants pocket.

\* \* \*

"The appellant testified the victim was his girl friend and that he had no recollection of stabbing or cutting her; that the two of them had been drinking for several hours and he must have blacked out; that he could not remember anything from around 10:00 P.M. on January 26, 1974, the time he was drinking with the victim and her sister, to the time he was questioned in the police station."

Our discussion in that opinion of the sufficiency of the evidence, one of the issues raised by Jones in that appeal, is significant to the questions now before us. We said then:

"There is no dispute about the *corpus delicti*, and the criminal agency of the appellant was amply established by the following evidence: The appellant was seen standing in close proximity to the victim with a knife in his hand that was dripping with blood. He threatened to kill the victim and admitted he had cut her. The blood on his clothes was the same type as that of the victim, and human blood was found on the knife in his possession at the time of his arrest.

"The contention of the appellant that there was no evidence of malice is without merit. The essential distinction between murder and manslaughter is the presence or absence of malice. *Chisley v. State*, 202 Md. 87, 105 (1952). The law presumes that in the absence of justification, excuse or some circumstances of mitigation, all homicides are committed with malice and constitute murder. *Bagley v. State*, 6 Md. App. 375, 379 (1969). No evidence was introduced and none apparently exists to overcome the presumption that this homicide was committed with malice. Additionally, an inference of malice may be drawn

from the fact of the use of a deadly weapon, directed at a vital part of the body. *McCord v. State*, 15 Md. App. 63, 69 (1972). The evidence here shows that the death of the victim was caused by multiple stab wounds to the chest, neck and back, which are vital parts of the body. *Lindsay v. State*, 8 Md. App. 100, 104 (1969)."

To the extent that Judge Grady, at the criminal trial in June 1974, and this Court, in the direct appeal opinion in March 1975, may have been guided by principles or concepts relating to malice or a presumption of malice, which were modified by the subsequent holdings of *Mullaney* and the two *Evans* cases, we must determine whether there was any error prejudicial to the rights of the accused.

In *Evans v. State, supra*, this Court, speaking through Judge Moylan, said at 705:

"The danger lurks in the fact that 'malice' means all of three different things:

1) the intention of doing a particular act;
2) the absence of justification or excuse; and
3) the absence of mitigating circumstances.

"The use of deadly force properly gives rise to a permitted inference only of the first aspect of malice, that is, the intent to kill (or, alternatively, the intent to do grievous bodily harm)."

We said further, at 706:

"When we speak of the inference, therefore, we must scrupulously restrict its operation to that limited aspect of malice involving the intent to kill or the intent to do grievous bodily harm. We must never speak of inferring malice generally. This universal statement may all too easily be taken as permitting the inference of those other aspects of malice which are 1) the absence of justification or excuse and 2) the absence of mitigation. Such an inference would, of course, be clearly un-

constitutional under *Mullaney v. Wilbur* and *Winship.* It would relieve the State unfairly of proving both the absence of justification or excuse and the absence of mitigation. It would thereby put upon the defendant the unconstitutional burden of exculpating himself generally or of lowering his guilt to manslaughter."

Appellant, in his brief here, summarizes succinctly and accurately when he says:

"The evidence adduced at Appellant's trial showed simply that he killed the victim, his girlfriend, by stabbing her in the chest, neck, and back. At that point, however, the evidence stops; there is no evidence as to the circumstances surrounding the killing."

Each of appellant's three arguments is based upon the same point. He apparently concedes that there was no evidence in the case which could be said to generate an issue of justification, or an issue of excuse. He contends that there was evidence — voluntary intoxication of the accused — which fairly generated the issue of mitigation. If that issue were decided in his favor, he says, the crime would be reduced from murder in the second degree to manslaughter. He says that the fact finder was permitted to infer that the homicide was not mitigated, but was equally permitted to infer that it was mitigated.

The trial judge, as the fact finder, was not permitted, appellant argues, to *presume* that component of malice which involves the intent to kill or to do serious bodily injury, from the fact of homicidal agency.

In *Gilbert v. State,* 36 Md. App. 196, 373 A. 2d 311 (1977), we considered the contention of the appellant, who had shot and killed her husband, that she was entitled to a judgment of acquittal on motion, when the State had offered no direct evidence that the homicide was not excused, and was not mitigated, and there was in the case sufficient evidence to raise a genuine issue as to each of those defenses. We

discussed the obligation of the State to prove the non-existence of certain elements. We said, at 199:

"Because such notions as justification, excuse and mitigation are not monolithic phenomena but come rather in infinite variety, anticipatory disproof of them in the abstract becomes a practical impossibility."

We said further, at 200-201:

"There are a number of reasons why we do not require such anticipatory disproof by the State, not the least of which is the devastating impact it would have upon judicial economy. At the most fundamental level, however, we do not require it, because to require it would be an absurdity.

"The device by which this relief is accomplished is called a presumption. The presumption operates in favor of the State. Absent some legally sufficient indication to the contrary, the homicide will be presumed to be not justified, not excused and not mitigated. Under the due process clause as interpreted by *In Re Winship*, 397 U. S. 358, 90 S. Ct. 1068, 25 L.Ed.2d 368 (1970), and applied by *Mullaney v. Wilbur, supra,* such a presumption in a criminal case has constitutional limitations. It may shift to the defendant the burden of producing evidence sufficient to generate a genuine jury question as to one or more of the possible defensive issues. It may never shift to the defendant the heavier burden of ultimate persuasion. In its lesser function of shifting to the defendant merely the burden of producing evidence, the presumption dissipates or totally disappears ('the bubble bursts') as soon as the defendant has met his lesser burden of producing enough evidence to generate a genuine jury question. At that point, the State no longer has the benefit of the presumption. The State then assumes the burden of disproving, beyond a

reasonable doubt, the defensive issue which has been generated.

\* \* \*

"Turning to the case at hand, the establishment of the fact that William Gilbert died and that the appellant was the homicidal agent gave rise initially to the presumption (in its properly limited sense of shifting simply the burden of going forward with evidence) that the killing was not justified, not excused and not mitigated."

The effect of that presumption was explained in *Gilbert v. State, supra,* at 203:

"A presumption, unlike an inference, has binding legal significance and, when unrebutted, moves the proof in a case into one end or the other of the spectrum of proof, where it is the judge's domain to rule upon evidentiary questions as a matter of law. In a homicide case, the presumptions of non-justification, non-excuse and non-mitigation move the proof on these issues to the point where, unless they are dissipated, the judge rules as a matter of law that they are established. In effect, he has directed a verdict against the defendant upon these sub-issues; although in a criminal case he cannot, of course, direct a verdict against the defendant as to the ultimate issue. Thus, in a jury trial, the jury receives no instructions upon these matters and is not entitled even to consider them. In a court trial, the judge does not consider these issues when he moves from his capacity as a legal referee to his other capacity of resolving factual disputes."

In affirming *Evans v. State, supra,* the Court of Appeals, in *State v. Evans, supra,* said, at 205:

"We fully concur with the Court of Special Appeals that in view of *Mullaney* and *Winship,* the

trial court's instructions to the effect that malice could be presumed from pointing a deadly weapon at a vital part of the body unconstitutionally relieved the State of its burden of proving, beyond a reasonable doubt, the absence of mitigation where, as here, a jury had returned a conviction of murder in the second degree and the defense of provocation had been fairly raised by the evidence in the case. While it may be proper to infer an intention to kill or to do grievous bodily harm from the directing of a deadly weapon at a vital part of the human anatomy, it is improper to infer 'malice' therefrom, since the use of deadly force does not itself negate the absence of mitigating circumstances * * * ."

The Court of Appeals, through Chief Judge Murphy, further explained, at 207-08:

"Of course, nothing in *Mullaney* per se precludes the use of traditional presumptions or logical inferences arising from established facts; what *Mullaney* precludes is the use of such presumptions or inferences only when they operate, ultimately, to relieve the State of its burden of persuasion in a criminal case, *i.e.*, its burden of proving beyond a reasonable doubt all the facts necessary to constitute the offense when the issue of their existence becomes an issue in the case. *State v. Hankerson*, 288 N. C. 632, 220 S.E.2d 575 (1975); *Evans v. State, supra.*

"The court in *Evans* was careful to point out that the burden of initially producing 'some evidence' on the issue of mitigation or self-defense (or of relying upon evidence produced by the State) sufficient to give rise to a jury issue with respect to these defenses, is properly cast upon the defendant. Once the issue has been generated by the evidence, however, the State must carry the ultimate burden of persuasion beyond a reasonable doubt on that issue. Nothing in *Mullaney* in any way purports to

circumscribe this well-established procedure; indeed in *Mullaney* the Court recognized that many states do require the defendant to make a threshold showing that there is 'some evidence' indicating that the defendant acted in the heat of passion before the prosecution is required to negate this element of the offense beyond a reasonable doubt. *See* 421 U. S. at 701-02 (n. 28). In other words, the prosecution need not in the first instance introduce evidence of facts which negate the existence of mitigating circumstances or of self-defense; and if the defendant adduces no evidence of these matters, no issue of their existence is raised in the case and no jury instructions regarding mitigating circumstances or self-defense need be given."

The Court of Appeals, in another opinion filed on the same day as *State v. Evans, supra,* again considered the effect of *Mullaney v. Wilbur* on jury instructions given by the trial judge in a homicide case. In *State v. Garland,* 278 Md. 212, 362 A. 2d 638 (1976), that Court reversed the judgment of this Court in *Garland v. State,* 29 Md. App. 27, 349 A. 2d 374 (1975). We had reversed Garland's second degree murder conviction, holding that the jury instructions did not fairly convey the necessary message that the burden of negating mitigation is upon the State, and for that reason violated the principles of *Mullaney v. Wilbur.*

The Court of Appeals disagreed, holding that the instructions as a whole did not relieve the State of its burden of proof. The Court of Appeals said, at 218:

"The court [of Special Appeals] in *Garland* next noted that the trial judge defined second degree murder as 'an unlawful killing with malice, but without the deliberation or premeditation' and that it defined 'malice' as 'something done intentionally and without a lawful excuse.' The Court of Special Appeals held that malice comprehends three aspects, *i.e.,* (1) the intentional act, (2) the absence of justification or excuse, and (3) the absence of

mitigation. It said that the first two aspects separate murder from non-culpable homicide and that the third aspect separates murder from manslaughter. It said that in defining 'malice,' the failure of the trial judge to include the element of the absence of mitigation in a case where mitigation was a genuine issue 'operated to relieve the State of its rightful burden of proving this critical element beyond a reasonable doubt.' "

After analyzing the trial judge's instructions, the Court of Appeals concluded, at 219:

"While we agree with the court in *Garland* that the element of malice includes the absence of mitigation, we do not think that the trial court's instruction that '[m]alice is something done intentionally and without a lawful excuse,' properly viewed in the context of the overall charge, constituted reversible error. Without question, under *Mullaney*, when the issue of mitigation is properly presented by the evidence, it is the State's burden to prove its absence beyond a reasonable doubt. *State v. Evans, supra.* In defining 'malice' in his jury instructions, it would have been preferable had the trial judge stated that the absence of mitigation was a necessary element of the offense. But considering the instructions in their entirety, as we must do, *State v. Grady*, 276 Md. 178, 345 A. 2d 436 (1975), we do not think that they unconstitutionally relieved the State of its rightful burden of proving this critical element beyond a reasonable doubt."

It will be seen that the pre-*Mullaney* error in our criminal practice did not lie directly in the fact that we presumed all homicides to have been committed with malice, and to constitute murder. The error occurred only when we failed to narrow the breadth of that presumption and thereby relieved the State of its rightful burden of proving the

absence of justification or excuse, which separates murder from non-culpable homicide, or the absence of mitigation, which separates murder from manslaughter, when one of those factors was a genuine issue in the case.

To relieve the State of its rightful burden by the device of a broad presumption is as bad, constitutionally, as affirmatively placing the burden upon the accused to persuade the fact finder that the homicide was justifiable, or excusable, or was mitigated. Even that error is harmless, however, if it relates to a defense as to which no legitimate issue was fairly generated by the evidence. In *Burko v. State*, 28 Md. App. 732, 349 A. 2d 355 (1975), *cert. denied*, 278 Md. 717 (1976), the trial judge had instructed the jury that "the burden rests on the Defendant to show you that the homicide should be reduced to manslaughter", an instruction which we said was flatly unconstitutional. We affirmed a conviction of second degree murder, however, saying, at 738-39:

> "Notwithstanding that error, it was an error in a vacuum — a purely academic error — as far as this particular case is concerned. As we further analyzed in *Evans* (Part IF and Part IIH), *Mullaney v. Wilbur* will not be applied where 'there was an erroneous allocation of the burden of persuasion on the questions of mitigation, justification or excuse but where they were not issues in the case.' "

* * *

> "After citing Maryland precedents in this regard in *Street v. State*, 26 Md. App. 336, 340-341, 338 A. 2d 72 (where an erroneous allocation of the burden of persuasion on the question of self-defense was held to be immaterial where no fair jury question had been generated as to self-defense), and *O'Connor v. State*, 234 Md. 459, 461, 199 A. 2d 807 (where an erroneous allocation of the burden of persuasion on the question of insanity was held to be immaterial where no fair jury question had been

generated as to insanity), we concluded, 'Erroneous instructions on non-issues are self-evidently immaterial.' "

So it is clear that the need to narrow the breadth of the presumption of malice exists only when the evidence in the case has fairly generated an issue of justification or excuse, or of mitigation. It remains just as valid, just as constitutional, today as before *Mullaney v. Wilbur*, to presume from the use of deadly force that aspect of malice which comprehends that the act was intentional. That presumption cannot support a conviction, however, unless supplemented by the absence of justification or excuse, and the absence of mitigation.

As we said earlier, in quoting from *Gilbert v. State, supra,* the absence of those aspects of malice is also presumed, until the bubble of that presumption is burst by the introduction of evidence sufficient to generate an issue of fact.

In the present case there was no evidence whatever which generated an issue of justification, or of excuse, or of mitigation. In appellant's futile grasp at an issue, he speaks only of mitigation. He makes no claim to justification or excuse. His claim that the evidence generated an issue of mitigation, which *could* negate malice, and reduce murder to manslaughter, is founded upon his own evidence that he had been drinking for several hours, must have blacked out, and could not remember anything from around ten o'clock the evening before, until he was questioned in the police station.

Appellant claims too much. Mitigation, in the criminal law of homicide, may exist when the act of the accused which resulted in death was in hot-blooded response to a legally adequate provocation. The view of the law is that such a circumstance may negate the malice which is an element of murder. We know of no case in which voluntary intoxication has been held to negate malice. The authorities are to the contrary.

Intoxication does indeed have a place in the law of homicide, but only at a level higher than manslaughter. Intoxication of an accused at the time of a homicide may

have rendered him incapable of the premeditation which is an element of one kind of first degree murder. Such lack of capacity to form the required specific intent was quite likely the reason that Judge Grady acquitted Jones of first degree murder in this case.

Almost 25 years ago the Court of Appeals, in *Chisley v. State*, 202 Md. 87, 95 A. 2d 577 (1953), said, at 106, that "voluntary intoxication will not reduce murder to manslaughter nor will it excuse the crime." That rule has been followed in Maryland without deviation. See *Bateman v. State*, 10 Md. App. 630, 272 A. 2d 64, *cert. denied*, 261 Md. 721 (1971).

If, in finding appellant guilty of second degree murder, Judge Grady presumed the existence of malice, his doing so placed no burden upon the appellant to prove, by any standard, any issue fairly generated by the evidence in the case. Neither did it relieve the State of its rightful burden of proving any issue in the case.

Neither in *Evans*, nor in *Gilbert*, was the intention of doing the act — the use of deadly force — an issue, and that aspect of malice required little if any discussion. We now say what was inherent in both of those opinions.

A. The use of deadly force raises a *presumption* of an intent to kill or to do grievous bodily harm. This presumption supplies one of the elements of malice. It stands as a *presumption*, and is rebutted only when a genuine issue is raised as to the non-existence of that intent.

B. Unless there is evidence which fairly generates an issue of fact as to the existence of justification, or of excuse, or of mitigation, there is a *presumption*, as to each such defense, of its non-existence.

C. When the evidence does generate an issue of fact as to the existence of one of these defenses, the presumption of its non-existence disappears. The burden then falls upon the State to persuade the fact finder, beyond a reasonable doubt, of its non-existence.

D. If the State fails to carry the burden of proving non-existence of the defense at issue, that defense prevails,

and overcomes the original presumption that the intent to kill or to do grievous bodily harm was malicious.

E. If the defense which prevails is justification or excuse, the homicide is non-culpable, and the accused is not guilty. If the defense which prevails is mitigation, the homicide is not malicious, and is reduced to manslaughter.

We revert to what we said when we affirmed Jones's conviction on direct appeal. We said, "The law presumes that in the absence of justification, excuse or some circumstances of mitigation, all homicides are committed with malice and constitute murder." As a principle of law that statement remains equally valid today.[1] It is in no way changed by *Mullaney v. Wilbur, supra,* or its precursor, *In re Winship,* 397 U.S. 358, 90 S. Ct. 1068, 25 L.Ed.2d 368 (1970), or by the *Evans* cases or the numerous others which have discussed and analyzed their effect.

What those cases did change was the allocation of the burden of proving certain issues in criminal cases. There is no such thing in criminal trial procedure as a burden of proof in a vacuum. A burden can exist only with relation to a disputed issue fairly in the case. There was no disputed issue fairly raised by the evidence at Jones's trial in the Criminal Court of Baltimore. Any question of burden of proof is just as irrelevant after *Mullaney v. Wilbur* as it was before.

There was no constitutional infirmity in the conviction and sentence of the appellant. He was not entitled to post conviction relief. Judge Cardin's order denying relief was correct.

> *Order denying post conviction relief affirmed.*
> *Appellant to pay costs.*

---

1. The importance of the qualifying language in this statement of law could easily be missed by a jury. The statement is a guide to the bench and bar, but instructions should be tailored to the evidence in the case. The Court of Appeals reiterated in State v. Grady, 276 Md. 178, 186, 345 A. 2d 436 (1975), that "it is not always appropriate to quote from appellate decisions in jury instructions".